JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Steven Sidewater, Samuel Sidewater, Herbert Vederman | Schnader Harrison Segal & Lewis LLP |

**(b)** County of Residence of First Listed Plaintiff  Palm Beach County, Fl
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Philadelphia, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
P. Rosen, L. Baskin, A. DeFalco, Spector Gadon, 1635 Market St., 7th Flr., Phila., PA 19103 215.241-8888

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[x] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[x] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C.

Brief description of cause:
Breach of Contract/Professional Negligence/Breach of Fiduciary Duty/Tortious Interference w/Contractual Relations/Declaratory & Injunctive Relief

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE  10/13/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _3120 S. Ocean Blvd., Palm Beach, FL, 2600 NW 64th Blvd, Boca Raton, FL 33496-2012_

Address of Defendant: _1600 Market St., Suite 3600, Philadelphia, PA 19103-7286_

Place of Accident, Incident or Transaction: _Philadelphia, Pennsylvania_

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _10/12/2022_   _____   13396
           Must sign here
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.* **Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

*B.* **Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☑ 9. All other Diversity Cases
    *(Please specify):* BREACH OF CONTRACT/PROFESSIONAL
    NEGLIGENCE/BREACH OF FIDUCIARY DUTY,
    TORTIOUS INTERFERENCE W/CONTRACTUAL
    RELATIONS/DECLARATORY & INJUNCTIVE RELIEF

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _Paul R. Rosen_, counsel of record *or pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: _10/13/2022_   _____   13396
        Sign here if applicable
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEVEN J. SIDEWATER**<br>**3120 South Ocean Boulevard**<br>**Apartment 2-301**<br>**Palm Beach, FL 33480**<br><br>**SAMUEL I. SIDEWATER**<br>**2600 NW 64th Boulevard**<br>**Boca Raton, FL 33496-2012**<br><br>**HERBERT T. VEDERMAN**<br>**3120 South Ocean Boulevard**<br>**Apartment 3-101**<br>**Palm Beach, FL 33480-5664,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**SCHNADER HARRISON SEGAL & LEWIS LLP**<br>**1600 Market Street, Suite 3600**<br>**Philadelphia, PA 19103-7286,**<br><br>*Defendant.* | CIVIL ACTION NO.<br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, Steven J. Sidewater, Samuel I. Sidewater and Herbert T. Vederman (collectively may be referred to as the "**Plaintiffs**"), by and through their counsel, Paul R. Rosen, Esquire, Leslie Beth Baskin, Esquire, and Andrew J. DeFalco, Esquire file this Complaint against Schnader Harrison Segal & Lewis LLP (hereinafter may be referred to as "**Schnader**"), and states:

### A.    INTRODUCTION

This litigation is an example of the massive failure by Schnader to protect the interests of three (3) of its long-standing clients, the Plaintiffs herein, which resulted in damages to them worth

millions of dollars.  At all times relevant thereto, Schnader was aware of the filing of the Ascena

Retail Chapter 11 bankruptcy proceeding in the Bankruptcy Court for the Eastern District of

Virginia (which included 63 affiliates, one of which was the Charming Shoppes), was aware of

deadlines to file proof of claims and other bankruptcy pleadings in the case, and yet failed to protect

Plaintiffs interests.  Further, notwithstanding the fact that Schnader received timely notice from

their clients and Debtor that the claims and notices of insurance policies were to be rejected by

Debtor in its proceeding, Schnader also failed to protect their clients by bringing these notices and

issues to the attention of their bankruptcy partner responsible which would have prevented serious

damage to the Plaintiffs.  These failures and other omissions were monumental.

Schnader missed all filing deadlines and allowed all rights of their clients to be barred by

court orders entered in the bankruptcy proceedings by their failure to take appropriate action.  In

addition, as further detailed herein, Schnader then relied on Debtor's counsel, who had a conflict

of interest, and who advised Schnader that Debtor would transfer ownership of the policies.  To

this end, Debtor gave Schnader information to reach out to insurance companies so they could

effectuate the transfer of the ownership of these policies.  Incredibly, Schnader failed to perform

an economic analysis as to the adverse tax consequences to Plaintiffs of such transfer, which, in

Schnader's own words, resulted in an "insurance mess" and would result in a "huge tax liability"

to the Plaintiffs.

Schnader's outrageous malpractice included omissions and bad faith conduct as set forth

herein.  Schnader:  (1) never brought in their own firm's bankruptcy counsel to represent their

clients in the bankruptcy to prevent harm; (2) never challenged or analyzed the insurance policies'

rejection even after receiving bankruptcy notice that their three (3) clients were creditors per the

notices of rejection of their insurance policies; (3) failed to file any objection or response to the

2

notice of claims or rejection; (4) recommended transfer of the ownership of the policies without any due diligence and relying on tainted, self-interested and harmful advice by Debtor's counsel to transfer ownership of the policies; (5) defaulted in failing to file any timely response which then permitted the Court to enter orders barring any further ability to challenge the rejection of all of Plaintiffs' contracts and the acceptance of Sidewater and Vederman administrative proofs of claims under their Consulting Agreements; (6) transferred the ownership of the polices from Debtor to the Plaintiffs without knowledge of the potential severe tax consequences; (7) forfeited Plaintiffs' ability to be free of all adverse exposures without properly consulting their Bankruptcy Department and, in fact, created consequential exposure by their own advice to Plaintiffs; and (8) caused Plaintiffs to be exposed to millions of dollars of unwarranted federal, state and local income taxes; and, (9) causing Steven Sidewater and Herbert Vederman or their estates to lose $2,000,000 each in guaranteed equity and death benefits.

## B.     **PARTIES**

1.      Plaintiff, Herbert T. Vederman, (hereinafter maybe referred to as "**Vederman**") is an adult individual and resident of the State of Florida, with a home address located at 3120 South Ocean Boulevard, Unit 3-101, Palm Beach, Florida 33480.

2.      Plaintiff, Samuel I. Sidewater, (hereinafter maybe referred to as "**Sam**") is an adult individual and resident of the state of Florida with a home address located at 2600 NW 64th Boulevard, Boca Raton, Florida 33496.

3.      Plaintiff, Steven J. Sidewater, (hereinafter maybe referred to as "**Steven**") is an adult individual and resident of the state of Florida with a home address located at 3120 South Ocean Boulevard, Unit 2101, Palm Beach, Florida 33480.

3

4.     Defendant, Schnader is a Professional Limited Liability Company organized and existing under the laws of the Commonwealth of Pennsylvania, with a Philadelphia address located 1600 Market Street, Suite 3600, Philadelphia, Pennsylvania 19103-7286.

**C.     JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the parties under 28 U.S.C. §1332, in that the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), in that Schnader is present in and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**D.     ASCENA RETAIL GROUP CHAPTER 11 BANKRUPTCY AND RELATIONSHIP WITH PLAINTIFFS**

7.     On July 23, 2020, Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and 63 affiliated debtors (collectively, the "**Debtor**") each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of for the Eastern District of Virginia (Richmond Division).  The cases are pending before the Honorable Frank J. Santoro and are jointly administered under Case No. 20-33113.

8.     On July 31, 2020, Debtor filed its Plan of Reorganization.  On March 3, 2021, the Bankruptcy Court entered an order confirming the Plan, and on March 5, 2021, the Effective Date of the Plan occurred, and thereafter the Plan was consummated.

9.     Early in these proceedings, the Bankruptcy Court had set the following deadlines for the filing of certain proofs of claim against the Debtor: (a) General Claims Bar Date: September 30, 2020; (b) Governmental Claims Bar Date: January 19, 2021; and (c) Administrative Claims Bar Date: January 19, 2021.

4

3597818_13

10.     Plaintiffs did not get notice of any general claims bar date until months after the September 30, 2020, bar date on, December 20th, which was Christmas Week. These notices were received by Plaintiffs and sent to Schnader and received by them on January 7th. Further, upon receipt of said notices, Schnader should have taken the logical step of looking at the dockets and entering their appearance which would have disclosed the bar dates.

11.     Plaintiffs were served months after the general bar date of September 20, 2020. It would not take a rocket scientist (let alone Schnader's Bankruptcy Department) to know that a pleading could have been filed to extend any necessary bar dates so that Plaintiffs would not have been prejudiced.[1]

E.     **SCHNADER HARRISON SEGAL & LEWIS LLP**

12.     Schnader holds itself out to the public as a full-service law firm with special expertise in the areas of, *inter alia*, corporate law, creditors rights and restricting, tax and wealth management, finance and financial services, family businesses, financial services and other commercial litigation.

13.     Most germane to this litigation is Schnader's Tax and Wealth Management Group which is comprised of lawyers who have broad experience in federal, state, local and international taxation, including sophisticated tax planning and structuring of transactions. Schnader states that this department is prepared to handle the tax aspects of merger, acquisition and joint venture transactions; tax credit syndications; real estate investments and tax-exempt financings; as well as other types of transactions. This group has substantial experience in virtually every area of international tax planning; bankruptcy and debt restructuring; employee benefits, including

---

[1] Plaintiffs note that Debtor has confirmed that the rejection bar date per the confirmed plan underline actually was March 27, 2021 (something Schnader should and could have checked on and underline never did).

3597818_13

counseling clients on pension, profit-sharing and retirement plans; as well as in a wide range of state and local taxation law issues."

14.     Also germane to this litigation is Schnader's Bankruptcy/Debt Restructuring Department, wherein they state that its attorneys advise corporations, partnerships and individuals on unique tax issues that arise in workout and bankruptcy situations, including discharge of indebtedness, income issues and income issues pertaining to the use and carryforward of losses and other tax attributes.

15.     Richard A. Barkasy, Esquire ("**Barkasy**") is a seasoned trial attorney and chair of Schnader's Creditors' Rights and Business Restructuring Practice Group.  He devotes a substantial portion of his practice to bankruptcy and handles a variety of complex commercial litigation matters.  He is a member of the firm's Executive Committee.  In addition, Mr. Barkasy is an adjunct professor of Delaware Corporate Litigation, Bankruptcy, Products Liability, Secured Transactions, Business Organizations and Construction Law at Rutgers University School of Law-Camden.

16.     Finally, regarding its Trust and Estate Department, Schnader posits that its attorneys provide sophisticated and expert legal services to high-net-worth individuals, owners of family businesses, corporate executives, fiduciaries and charitable organizations in a variety of specialized areas. They state that they offer these services in an integrated way, providing personal, focused attention while making use of the broad array of experience available from our litigation and transactional lawyers on a case-by-case basis, as needed.

17.     One of the Debtor's is the Charming Shoppes, a retailer of plus-sized women's apparel. Charming Shoppes was founded in 1940 by Moe Sidewater, father of Steven and Sam Sidewater and uncle of Herbert T. Vederman.

18.     Plaintiffs have been clients of Schnader for over twenty (20) years.

3597818_13

19.     Schnader had previously been representing the Plaintiffs regarding their relationship with Charming Shoppes.

20.     Pursuant to Debtor's Fifth Amended Plan Supplement, filed on February 22, 2021, the Plaintiffs' executory contracts with Debtor were to be rejected as referenced below (specifically herein the Charming Shoppes affiliates) for each of the Plaintiffs.  They received notice that unless they filed a timely objection, the Court would enter an order granting the motion for rejections and Plaintiffs would be barred from enforcing their rights.  No Objections or other responsive pleadings were ever filed by Schnader.

21.     On February 22, 2021, prior to their proposed rejection, the following executory contracts specifically provided certain rights to the Plaintiffs by Charming Shoppes as follows:

a.     On or about May 15, 1989, Charming Shoppes and Steven entered into a Consulting Agreement ("**Steven Agreement**").  The Steven Agreement included, *inter alia*, that:

> i.     Steven was then serving as Vice Chairman of the Board of Charming Shoppes and wished to terminate his active employment by them and to resign as a director;
>
> ii.    In recognition of Steven's extraordinary services to Charming Shoppes and to ensure his continued services in a consulting and advisory capacity, Charming Shoppes agreed to engage Steven as a consultant with the following compensation and benefits:
>
> iii.   Yearly salary of $175,000.00;
>
> iv.    Continued payment for the premiums due on his life insurance policies currently maintained on his life having a gross death benefit of $4,000,000.00.  As part of this benefit, Steven and Charming Shoppes "irrevocably agreed that the beneficiary designation on such policies will be changed and maintained so that" Steven will "receive $2.0 million of the net death benefits payable under such policies...".  (Paragraph 5.3) ("**$2 Million Split Policy Benefit**").

*See* **Exhibit "1"**, a true and correct copy of the Steven Agreement.

b.      On or about February 1, 1991, Charming Shoppes and Vederman entered into a Consulting Agreement ("**Vederman Agreement**").  The Vederman Agreement included, *inter alia*, that:

    i.      Vederman formerly served as an Executive Vice President, and in recognition of his services, wants to retain him as a consultant;

    ii.     Yearly salary of $160,000.00;

    iii.    Continued payment of premiums due on his life insurance policies currently maintained having gross death benefits equal to $4 million and part of these benefits, the policies would be changed and maintained so that Vederman (or his beneficiaries) will receive $2 million of the net death benefits payable under such policies, and Charming Shoppes will receive the balance.

*See* **Exhibit "2"**, a true and correct copy of the Vederman Agreement ("**$2 Million Split Policy Benefit**").

c.      Life insurance policies purchased by Charming Shoppes for the benefit of the Plaintiffs as follows:

    i.      John Hancock Policies:
    - Cert. #3,778,828-7 for the Benefit of Steven (4/1/86) – (initial face amount of $2,750,000.00)
    - Cert. #3,778,828-7 for the Benefit of Steven (4/24/86) – (initial face amount of $2,750,000.00)
    - Cert. #3,778,8281 for the Benefit of Vederman (4/1/86) – (initial face amount of $2,750,000.00)
    - Cert. #3778,8288 for the Benefit of Sam (4/1/86) – (initial face amount of $2,750,000.00)
    - Cert. #4023003 for the Benefit of Steven (3/1/86) – (initial face amount of $1,000,000.00)
    - Cert. #4023008 for the Benefit of Vederman (3/1/86) – (initial face amount of $1,000,000.00)
    - Cert. #4023010 for the Benefit of Sam (3/1/86) – (initial face amount of $100,000.00)

8

    ii.    <u>Principal Policies</u>:
- Cert. # 2553265 for the Benefit of Sam (8/1/72) – (initial face amount of $100,000.00)
- Cert. # 2553268 for the Benefit of Steven (8/1/72) – (initial face amount of $100,000.00)
- Cert. #2553268 for the Benefit of Vederman (8/1/72) – (initial face amount of $50,000.00)

    iii.    <u>Equitable Life Assurance Society of the United States</u>:
- Cert. #78239771 for the Benefit of Vederman (4/1/78) Face Amount: $100,000
- Cert. #78227954 for the Benefit of Sam (4/1/78) Face Amount: $100,000
- Cert. #78227920 for the Benefit of Steven (4/1/78) Face Amount: $100,000

22.    In 2012, Charming Shoppes and its assets were acquired by Ascena, and each of the Plaintiffs had negotiated a separate financial arrangement going forward with Charming Shoppes.

23.    Shortly after December 20, 2020, Steven was the first of the Plaintiffs to receive a Notice from Debtor enclosing a Proof of Claim form for his Administrative Claim attached hereto as **"Exhibit 3"**.  It also included information about his Charming Shoppes/Phoenix insurance policy and Steven sent that information to Schnader, who received it from him on January 7, which impacted all three (3) Plaintiffs and contained information about the bankruptcy administrative claim bar date on <u>January 19, 2021</u>.  Steven had immediately sent this to Schnader and given their long relationship of representation of the Plaintiffs, expected that Schnader would protect all of their interests as opposed to: (a) ignoring all bankruptcy notices; (b) failing to enter an appearance; and (c) monitoring the bankruptcy proceeding for their clients.  These actions/failures to act allowed Schnader to create unexpected huge financial exposure by transferring the insurance policies to their clients as owners and exposing them to unconscionable losses.

9

24.     As early as January 7, 2021, Roy Ross, Esquire ("**Ross**"), Chair of Schnader's Tax and Wealth Management Department and longtime counsel to Plaintiffs, acknowledged receipt of correspondence from Jerry Hogan, ("**Hogan**"), Plaintiffs' finance adviser, which included the information regarding the insurance policy information for Sam and Steven and provided Schnader with the notice of the Ascena Chapter 11, and assumed that Herb, Sam and Steven were creditors in that bankruptcy.  Clearly, **as of January 7, 2021**, Schnader was aware of, at a minimum, proof of claim deadlines for the filing of Plaintiffs' administrative claims that needed to be submitted for Steven and Vederman before January 19th, and should have immediately referred this to Schnader's Bankruptcy Department, who in turn should have taken immediate action to enter Schnader's appearance in the bankruptcy proceedings and then take control of the Plaintiffs' interests which included investigation and preservation of their claims.  *See* **Exhibit "4"**, a true and correct copy of the January 7, 2021, email with attachment.

25.     On January14, 2021, Ross emailed Plaintiffs and Hogan and confirmed that he knew that Steven and Sam received a proof of claim bar date notice in the Ascena bankruptcy. Ross noted therein that the legal fees for processing these claims, "will be significant" and "there is no way to know if anything will come from going through the process.  Please give me recommendations." *See* **Exhibit "5"**, a true and correct copy of the January 14, 2021, email.

26.     On January 15, 2021, another Schnader partner, also a long-time lawyer to the Plaintiffs, and the Chair of the firm's Tax and Wealth Management Department, Bruce Rosenfield, Esquire ("**Rosenfield**") (note that neither Ross nor Rosenfield are familiar with bankruptcy issues) queried Morey Goldberg, ("**Morey**") principal at RockGlen (Plaintiffs' insurance broker) as to whether he thought the insurance policies were "salvageable" at a reasonable cost.  *See also* **Exhibit "5"**, a true and correct copy of the January 15, 2021, email.

27.     On January 16, 2021, three (3) days **before** the then-January 19, 2021 bar date, Rosenfield emailed Plaintiffs and stated that "this is an issue I raised with you and your cousins. ***I think that someone needs to pursue these claims, but it should be someone with bankruptcy experience*** *(emphasis added)*.  I was hoping that if the three of you combined efforts there may be some fee savings, but since your claims are different – not sure.  I thought that we hired Morey to review whether we could buy the policies out and try to keep them going ourselves.  ***"I think that his effort was a failure."*** *(emphasis added)*.  *See* **Exhibit "6"**, a true and correct copy of the January 16, 2021 email.

28.     At this point, over one (1) week had passed and no one at Schnader had reached out to anyone in its Bankruptcy Department, including Barkasy, to review the bankruptcy dockets or pleadings to see the status of the proceedings or to confirm bar dates.  This is particularly disturbing and negligent as it should have been crystal clear from the pleadings that Plaintiffs forwarded to Schnader that there were imminent deadlines to meet to protect Plaintiffs' interests.

29.     On January 18, 2021, Hogan emailed Ross and inquired as to whether he knew of anyone with bankruptcy experience who could pursue the claims for the Plaintiffs.  Again, everyone knew, including Ross and Rosenfield, that Schnader had a pre-eminent Bankruptcy Department who could be immediately available to protect Plaintiffs' claims, including its Department Chair, Barkasy.

30.     On January 18, 2021, Rosenfield emailed Ross and opined regarding the Sidewaters' policies, "I think that Steven has an absolute claim for $2 million- doesn't he?  It was secured by the insurance policy but not dependent on that- ***let me ask about a boutique bankruptcy firm....***" *(emphasis added)*.  *See* **Exhibit "7"**, a true and correct copy of the January 18, 2021, email.  Rosenfield here should not have felt the need to reach out to a "boutique bankruptcy firm"

as Schnader was well-versed and had a well-recognized bankruptcy department. Also, on this date (January 18, 2021), Schnader operated under the mistaken belief that they had only twenty-four (24) hours to file for protection for **all** as there was a January 19, 2021, administrative claim of Plaintiffs claims (at a minimum, Schnader should then have filed a Motion to allow for late filed claims or a claim for an "unknown amount").

31.     Schnader did not obtain any information that they were advised to get by Rosenfield to protect their clients or proceed to do any due diligence to determine that Vederman had a similar Consulting Agreement and a similar administrative claim as Steven or turn both these claims over to its Bankruptcy Department to process both in a timely fashion knowing of the January 19th bar date.

32.     Schnader never cured these failures even though the mere filing of an entry of appearance by Barkasy would allow Schnader to have monitored the bankruptcy and receive notices that impacted Plaintiffs on or before January 19th. The Bankruptcy Department would have allowed Schnader's Bankruptcy Department to know of the bar dates and extensions thereof. Importantly, Schnader could have filed the completed and filed $2 million administrative proofs of claim which could have been paid Vederman and Steven under their Consulting Agreement. *See* **Exhibit "8"**, a true and correct copy of the June 21, 2022, email from Malarkey. *See* Footnotes 2 and 3 below missing a second chance to cure this default by their own existing Bankruptcy Department.

33.     On January 20, 2021, numerous additional emails were again circulated amongst Ross, Rosenfield and others at Schnader which confirmed that Ascena filed for bankruptcy protection, inquiring as to whether a Receiver was appointed, *etc.* and inquiring if we can "cut a

deal" to get Plaintiffs insurance policies out (assuming they are salvageable). *See* **Exhibit "9"**, a true and correct copy of the January 20, 2021, email.

34.     On January 20, 2021, despite the fact that Schnader had the bankruptcy information, had notice of the proof of claim bar date and the related bankruptcy documents for at least a week, they did nothing. (*See* Paragraph 10 above). *See* **Exhibit "10"**, a true and correct copy of the January 20, 2021, email.

35.     On January 22, 2021, Ross emailed Rosenfield and told him that he spoke with Barkasy who advised that they should reach out to Debtor's counsel to discuss. *See* **Exhibit "11"**, a true and correct copy of the January 22, 2021, email.

36.     Clearly, the three (3) Schnader partners (Ross, Rosenfield and Bankruptcy Chairman Barkasy) failed to take <u>any</u> steps necessary to protect the Plaintiffs in Bankruptcy Court, which failures included reviewing bankruptcy dockets and filing of pleadings so they could assess the Plaintiffs' claims and/or move for more time to file claims.

37.     This failure of Schnader to properly act is shocking malpractice by their omissions and their reckless disregard of Plaintiffs' rights even **<u>before</u>** reaching out to Debtor's counsel.

38.     Further, even assuming *arguendo* that the bar date had passed to file a claim, it was legally sound at **<u>this</u>** juncture for Plaintiffs, through Schnader, to file a motion and obtain relief to, *inter alia*, file any late claims.[2]

39.     On January 25, 2021, Schnader again demonstrated concern and a sense of urgency when Rosenfield emailed Ross and Hogan to ask if Schnader received the supporting documents for Plaintiffs against Charming Shoppes. He states that he is "**particularly worried about the**

---

[2] Schnader was even more careless when Plaintiffs received a notice in late February 2021 of the potential rejection of their insurance policies, giving Schnader another chance to cure their defaults in time to file an objection to the proposed rejections and resultingly being barred forever in enforcing the policies, which Schnader again ignored.

**filing date for Steven's.**" (*emphasis added*).  *See* **Exhibit "12"**, a true and correct copy of the January 25, 2021, email.

40.     On January 25, 2021, Rosenfield restated that he is sure that Steven had a retirement contract guaranteeing him $2 million at death with the insurance as the primary source.  Rosenfield then emailed Hogan and stated: "I am sure that Steven had a Consulting Agreement of funding."  Despite his legal opinion that he is confident that there is a **guaranteed** claim for (at least) Steven, neither he, nor Ross, nor Barkasy, nor any other professional at Schnader did anything to preserve this claim and turned a blind eye.[3]

41.     On January 28, 2021, three (3) weeks after receiving Plaintiffs bankruptcy notices, Rosenfield emailed Ross asking him to forward the Steven Agreement to Barkasy and asked for his recommendations.  On the same date, Ross again contacted Barkasy and Rosenfield to follow up on their call from the prior week where he mentioned that Schnader got the attached forms from Steven after the due date.  Plaintiffs' assistant checked their safe and sent Schnader informational forms regarding the Consulting Agreements for the Plaintiffs.  Rosenfield asked his Schnader partners (including Barkasy) to review the claim forms to see if they can go forward post-deadline and requests that they offer a course of action.  *See* **Exhibit "13"**, a true and correct copy of the January 28, 2021 email.  Clearly, this recommendation should have been made by Schnader weeks prior to this January 28, 2021, email, but it was still not too late to raise the issues in Court.

42.     On February 1, 2021, recognizing the urgency and time sensitivity of the claims, numerous emails circulated between Rosenfield and Barkasy again affirming that Sidewater is a very time sensitive issue ($2 million) sensitive issue and complains that it may "already may be too late."  Barkasy related to Rosenfield that if the client actually does have an administrative

---

[3] Schnader had no idea, (nor did they investigate the fact) that at least Vedereman also had a $2 million clause in his Consulting Agreement.

3597818_13

claim, ***"it is time-barred, and a Motion for Relief would need to be filed."*** (*emphasis added*).  *See* **Exhibit "14"**, a true and correct copy of the February 1, 2021, email.  Schnader, and especially Barkasy, were careless and reckless and should have acted then to file a Motion for Relief or a similar motion to protect Plaintiffs' interests and not just "ponder" taking such action, which action never took place.

43.     On February 2, 2021, Ross contacted a partner in Schnader's Washington, D.C. office and related that he is reaching out to seek advice for Plaintiffs, their long-term clients, Steven and cousin Herb.  He related that they "are creditors in Ascena bankruptcy which filed for bankruptcy in Virginia.  Attached is bankruptcy document which Steven sent us.  The administrative bar date was January 19 which was when we received the forms.  Note that Schnader's files indicated it was received by them on January 7th. Also attached are excerpts from the Consulting Agreements with Charming Shoppes.  In Paragraph 5.3, Company agrees to pay premiums due on life insurance policies that have a gross death benefit of $4 million.  Although we know the insurance company and the policy numbers, the insurance company will not talk with us since the insurance is owned by companies and not our clients. As time is of the essence, what would be the best course of conduct for clients now?  Could we ask bankruptcy counsel the status?  Rich said once we know status, we can try to figure out from review of bankruptcy filings whether there is a claim that should be asserted and what it should be.  If yes, should Schnader handle, or should it be referred out to a bankruptcy boutique in Virginia?  If yes, who would you recommend?" *See* **Exhibit "15"**, a true and correct copy of the February 2, 2021, email.  Plaintiffs posit that this inquiry is ludicrous in light of the fact that Schnader and Barkasy should have caused the Schnader Bankruptcy Department to file an immediate entry of appearance on behalf of Plaintiffs around January 7, 2021 and taken actions to protect Plaintiffs' interests.  Even prior to

the last bar date, Schnader had various means in bankruptcy to protect Plaintiffs from day one, in reviewing the dockets and/or reviewing the dates of the original bankruptcy notice to their clients and filing pleadings.

44.     On February 17, 2021, Debtor filed a Notice of Filing of Fourth Amended Plan Supplement, Document #1704, which included references to additional exhibits as follows: **Exhibit D** – Amended Rejected Executory Contract and Unexpired Lease List [PLAINTIFFS CONSULTING ADMINISTRATIVE CLAIMS AND INSURANCE POLICIES], and **Exhibit D-1** – Comparison to Rejected Executory Contract and Unexpired Lease List filed on November 23, 2020.  Schnader would have had all such notices if they had merely filed an appearance, but only their clients received the notices and subsequently provided them to Schnader.  Taking such action would have given Schnader ample time to object, which they again (incredibly) ignored, causing the Court to enter an Order effectively barring Plaintiffs' rights. *See* Footnotes 2 and 3 above, missing a third chance to cure their defaults by their own existing Bankruptcy Department.

45.     On February 22, 2021, Debtor filed a Notice of Filing of a Fifth Amended Plan, Document #1757 which Notice specifically references certain Fifth Amended Plan Supplement documents, which includes reference to additional exhibits as follows:  **Exhibit D** – Amended Rejected Executory Contract and Unexpired Lease List, and **Exhibit D-1** – Comparison to Rejected Executory Contract and Unexpired Lease List filed on February 17, 2021.  This Notice of Rejection, which was provided to Schnader, included the rejection of both of the Consulting Agreements and the insurance policies for Plaintiffs, as detailed in Paragraph 13 of the Complaint. *See* **Exhibit "16"**, a true and correct copy.  Again, Schnader displayed inexplicable and continuous lack of attention to its longstanding clients by failing to make certain that they properly represented Plaintiffs and displayed a consistent failure to even know what was taking place during the

bankruptcy.  Their omissions were consistent with their continuous failures in the protection of their clients' rights.  *See* Footnotes 2 and 3 above missing a fourth chance to cure their defaults by their own existing Bankruptcy Department.

46.     To make Schnader's failures even more shocking, on February 23, 2021, after much back and forth, Schnader (in particular Ross) hired a local Virginia bankruptcy lawyer, Michael Hastings, Esquire ("**Hastings**") of Wood Rogers who agreed to undertake this representation.

47.     On February 25, 2021, Hastings emailed Debtor's counsel advising that he represented three (3) individuals (Plaintiffs herein) who sold a business to Charming Shoppes and as part of a buyout.  He advised that Charming Shoppes funded the life insurance premiums owned by Charming Shoppes and the benefits were split between Charming Shoppes and his clients. Hastings then stated that he understood that there is "a significant value for Debtor in these policies such that they are likely to be assumed and assigned"?  Hastings then stated that he was "trying to figure out whether these policies were assumed and assigned, and I am having difficulty finding the answer."  Plaintiffs posit here that this is a strange comment for a seasoned bankruptcy lawyer to make in light of the pleadings filed in the proceeding which were easily accessible to him.  On the same date, Ross emailed Rosenfield and confirmed Hastings' "informal engagement" in this matter.  *See* **Exhibit "17"**, a true and correct copy of the February 25, 2021, email.  Hastings' assertion that there is "significant value for Debtor in these policies" is again without investigation or analysis by himself or Schnader.  But it should be noted that Schnader never had their Bankruptcy Department actively involved.  The lawyers involved were in tax and wealth management, with bankruptcy experts in the same office mere steps away, who never really offered or helped the clients.

17

48.     Debtor's counsel immediately replied and forwarded to Hastings a "highlighted version" showing the rejection of the subject contracts.  Hastings replied and stated "that in light of policies being rejected for three (3) clients, my clients are interested in assuming them--we need contact information for the insurers.  *See* **Exhibit "18"**, a true and correct copy of the February 25, 2021, email.  Again, a review of the dockets would have shown them that the notices of rejection went out in late February with a thirty (30) day notice of an opportunity to file objections or consents to the administrative claims and protection of insurance policies or other rights to surrender the policies and avoid any tax issues.  Plaintiffs knew nothing of what was going on, except that they believed they were being properly represented by the appropriate attorneys selected by Schnader's Tax and Bankruptcy Departments to protect all their interests and not expose them to damages, based upon Schnader's self-professed expertise in all relevant areas of the law.

49.     On February 25, 2021, Hastings asked Debtor's counsel for the insurance companies contact information in light of the policies' "rejections".  Debtor immediately responded and sent the requested insurance company contact information and pledged to further cooperate to get documents signed for the proper transfer of the in policies to Plaintiffs.  *See* **Exhibit "19"**, a true and correct copy of the February 25, 2021, email.

50.     Debtor's counsel and Schnader (if bankruptcy counsel was involved) clearly should have known that the actual rejection had not <u>yet</u> become effective.  Clearly, Debtor's counsel wanted to cooperate with Hastings in an attempt to avoid objections to the proposed rejection being asserted by Plaintiffs, and this action was not even questioned by Hastings or Schnader.  In fact, Schnader should have been conscious of this conflict and should have investigated Debtor's

18

position, or at a minimum, reviewed and entered their appearance and monitored the dockets to protect its clients and follow appropriate bankruptcy law and procedures.

51.     On February 25, 2021, Hastings forwarded the necessary information to Ross. Hastings then stated: "hope this gets the clients to where they need to be--I am happy to help on anything else, but it may be more efficient for you to reach out to the insurers and get the forms.  I am happy to circle back to insurers and get the required signatures."  *See* **Exhibit "20"**, a true and correct copy of the February 25, 2021, email.

52.     The above-referenced events regarding transfers of the policies effectively precluded the assertion of Plaintiffs' rights and began the exposure to Plaintiffs upon the actual transfer of the policies on the advice of Schnader.  All of the aforementioned was unknown to Plaintiffs as they rightfully assumed that Schnader was protecting their interests, as opposed to causing harm to them.

53.     Hastings appears to have performed no further legal services to assist Schrader or the Plaintiffs in this matter.

F.     **THE TRANSFER OF THE OWNERSHIP
OF INSURANCE POLICES TO PLAINTIFF**

54.     Over the course of the twelve (12) or so months, Schnader worked with Debtor's counsel and the insurance companies directly to effectuate the transfer of the insurance policies from Charming Shoppes to Plaintiffs.  Again, during this time period, Schnader performed <u>no</u> analysis as to any implications, including the tax consequences to Plaintiffs of such transfers of which Bruce was previously aware and voiced concerns.

55.     It is not until April 25, 2022, **<u>over 15 months</u>** since first getting notice of the Ascena bankruptcy and the proposed rejection of the insurance policies, *etc.* does a light go off in

Schnader's collective minds that the insurance policy transfers may have resulted in HUGE tax liability for the Plaintiffs. On this date, Rosenfield emailed Hogan and stated that, with the policy transfers, there are "huge tax liabilities." *See* **Exhibit "21"**, a true and correct copy of the April 25, 2022 email. Again, the realization that there would be **huge tax liabilities** should have been made by Schnader **prior** to the decision to transfer the policies, a year prior thereto. Further, once Schnader had the mindset in February 2021 that the policies ownership should be transferred from the Debtors to their clients, they considered the issue solved for their clients by their advice to complete the wrongful transfer, and continued to neglect any obligation, consider, or evaluate the tax consequences to the Plaintiffs.

56.     On April 25, 2022, Rosenfield emailed Hogan again and stated that he had just spoken with Plaintiffs' insurance agent, Tim Malarkey ("**Malarkey**"), and they are "digging into" the policy transfers. He pointed out that there are huge loans against the policies and if the policies self-destruct (which they will do in a couple of years) there would be huge income tax liability for each." *See also* **Exhibit "21"**, a true and correct copy of the April 25, 2022, email.

57.     Around this time there is a frenzy within Schnader in an attempt to get rid of Plaintiffs' "debt disaster." *See* **Exhibit "22"**, a true and correct copy of the April 24, 2022, email.

58.     On May 13, 2022, Rosenfield advised Ross that when he spoke with Sam, he gave him a heads up as to "the insurance mess". *See* **Exhibit "23"**, a true and correct copy of the May 13, 2022 email. Again, this "insurance mess" should have been determined by Schnader over a year before.

59.     On May 16, 2022, Hogan emailed Schnader and asked them to explain why there is a "huge tax liability". *See* **Exhibit "24"**, a true and correct copy of the May 16, 2022, email.

60.     On June 21, 2022, Malarkey emailed Rosenfield in regard to Steven and stated that: "If you are interacting with Steven's income tax advisor on whether or not there is some tax relief available from the loss of the guarantees from Charming Shoppes, another question occurred to me…when the policy transferred to Steven, is there a record of a taxable event to Steven at the time?" *See* **Exhibit "25"**, a true and correct copy of the June 21, 2022, email.

61.     On June 24, 2022, Malarkey emailed Rosenfield again and told him that he spoke with a former insurance attorney.  On June 27, 2022, Malarkey followed-up on his prior email and states that the "attorney he spoke with doesn't think he is aware of a direct path of reversing the transfer without negative tax implications." *See* **Exhibit "26"**, a true and correct copy of the June 27, 2022, email.

62.     As stated above, at no point is there any indication that Schnader acted in any manner whatsoever to protect any of Plaintiffs' claims or rights and acted with careless and reckless disregard, causing the intentional rejection of their Consulting Agreements or preserving Steven's and Vederman's "absolute claim" for the $2 million, as existing insurance beneficiaries under their insurance policies, or even to investigate prior to the transfers whether there would be tax consequences regarding the transfer of their ownership, and failed to act to protect the Plaintiffs from all insurance, tax and other unconscionable and irreparable harm and damages.

## COUNT I
## BREACH OF CONTRACT

63.     Plaintiffs incorporate by reference paragraphs 1 through 62 of this Complaint as set forth above.

3597818_13

64.     Plaintiffs have used the legal services of Schnader for over 25 years for all of their legal work, including but not limited to estate planning, tax planning, and creditors rights and bankruptcy advice.

65.     In performing the legal services for which it was retained, Schnader was required to exercise ordinary skill and knowledge related to the professional practice of law.

66.     As attorneys who held themselves out to have expertise in the requested representations germane to the facts as contained in this Complaint, Schnader failed to exercise the ordinary skill and knowledge related to the practice of law, a failure that directly led to the huge losses suffered by Plaintiffs.

67.     The conduct of Schnader in performing contracted services relating to the legal matters to which they were entrusted was so deficient as to substantially cause the economic damages suffered by Plaintiffs based on: (a) Schnader's failure to preserve administrative and/or other claims of Plaintiffs; (b) Schnader's failure to perform due diligence in assessing the costs, tax consequences, *etc.* of transferring Plaintiffs' insurance policies from Debtor to Plaintiffs themselves.

68.     As a direct and proximate cause of Schnader's willful and wanton conduct Plaintiffs have suffered substantial economic losses for which compensation is sought herein, including but not limited to:  (a) payment by Schnader to Steven of the $2 million as guaranteed under the Steven Agreement; (b) payment by Schnader to Vederman of the $2 million as guaranteed under the Vederman Consulting Agreement; (c) indemnification to all Plaintiffs of taxes and other significant costs associated with the transfer of the insurance policies from Debtor to Plaintiffs; (d) payment by Schnader for reimbursement to Sam Sidewater for  his interest in the split dollar

policies; and (e) reimbursement to all Plaintiffs for the income tax they paid with respect to premiums paid by Debtors predecessor.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor, and against Schnader, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), together with costs, pre- and post-judgment interest, and such other relief as the Courts deems justified.

## COUNT II
## PROFESSIONAL NEGLIGENCE

69.     Plaintiffs incorporate by reference paragraphs 1 through 68 of this Complaint as set forth above.

70.     Schnader owed a duty to Plaintiffs to exercise ordinary skill and knowledge related to the practice of law, to the supervision of its employees engaged in the professional practice of law, and it is vicariously liable for their failure to exercise ordinary skill and knowledge related to the professional practice of law.

71.     Schnader's failure to exercise ordinary skill related to the professional practice of law consisted of its failing to preserve the administrative and/or other claims of Plaintiffs in the Ascena bankruptcy and failure to perform due diligence in assessing the significant costs, tax consequences, *etc*. of transferring Plaintiffs insurance policies from Debtor to Plaintiffs themselves.

72.     As a direct and proximate cause of Schnader's willful and wanton conduct Plaintiffs have suffered substantial economic losses and emotional distress associated with the improper actions of Schnader; including but not limited to (a) payment by Schnader to Steven of the $2 million as guaranteed under the Steven Agreement; (b) payment by Schnader to Vederman of the

$2 million as guaranteed under the Vederman Agreement; (c) indemnification to all Plaintiffs of taxes and other significant costs associated with the transfer of the insurance policies from Debtor to Plaintiffs; (d) payment by Schnader for reimbursement to Sam Sidewater for his interest in the split dollar policies; and (e) reimbursement to all Plaintiffs for the income tax they paid with respect to premiums paid by Debtors predecessor.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor, and against the Schnader, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs, pre- and post-judgment interest, attorney fees, and such other relief as the Court deems just and proper under the circumstances presented.

**COUNT III**
**BREACH OF FIDUICARY DUTY**

73. Plaintiffs incorporate by reference paragraphs 1 through 72 of this Complaint as set forth above.

74. Schnader owed a fiduciary duty to Plaintiffs while acting as their legal representatives in all instances as outlined herein.

75. Schnader breached that fiduciary duty to Plaintiffs.

76. Schnader's breach of fiduciary duty consisted of its failure to preserve the administrative and/or other claims of Plaintiffs in the Ascena bankruptcy and failure to perform due diligence in assessing the significant costs, tax consequences, *etc.* of transferring Plaintiffs insurance policies from Debtor to Plaintiffs themselves, including but not limited to: (a) payment by Schnader to Steven of the $2 million as guaranteed under the Steven Agreement; (b) payment by Schnader to Vederman of the $2 million as guaranteed under the Vederman Agreement; (c) indemnification to all Plaintiffs of taxes and other significant costs associated with the transfer

24

of the insurance policies from Debtor to Plaintiffs; (d) payment by Schnader for reimbursement to Sam Sidewater for his interest in the split dollar policies; and (e) reimbursement to all Plaintiffs for the income tax they paid with respect to premiums paid by Debtors predecessor.

77.     As a direct and proximate cause of Schnader's willful and wanton conduct Plaintiffs have suffered substantial economic losses and emotional distress associated with the aforementioned conduct.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor, and against the Defendant, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), together with costs, interest, pre- and post-judgment interest, attorney fees and such other relief as the Court deems justified.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

78.     Plaintiffs incorporate by reference paragraphs 1 through 77 of this Complaint as set forth above.

79.     Through the conduct set forth above, Schnader took purposeful, intentional and wrongful actions in reckless and careless disregard of their knowing exposures, specifically intended to harm that existing relation, to the detriment of Plaintiffs.

80.     As a direct and proximate result of the conduct of Schnader, Plaintiffs have sustained serious damages as more fully set forth above. The misconduct of Schnader was willful and wanton.

81.     As a direct and proximate cause of Schnader's willful and wanton conduct Plaintiffs have suffered substantial economic losses for which compensation is sought herein, including but not limited to: (a) payment by Schnader to Steven of the $2 million as guaranteed under the Steven

Agreement; (b) payment by Schnader to Vederman of the $2 million as guaranteed under the Vederman Agreement; (c) payment by Schnader of indemnification to all Plaintiffs of taxes and other costs; (d) payment by Schnader for reimbursement to Sam Sidewater for his interest in the split dollar policies; (e) reimbursement to all Plaintiffs for the income tax they paid with respect to premiums paid by Debtors predecessor; and (f) punitive damages and attorney fees and such other relief as may be appropriate and justified.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in his favor, and against Schnader, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), including costs, interest, reasonable attorneys' fees and punitive damages, as well as any other relief deemed appropriate by the Court.

## COUNT V
## DECLARATORY AND INJUNCTIVE RELIEF

82.     Plaintiffs incorporate by reference paragraphs 1 through 81 of this Complaint as set forth above.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor, and against Schnader as a direct and proximate cause of Schnader's willful and intentional conduct, causing Plaintiffs substantial irreparable losses, including, but not limited to: (a) payment by Schnader to Steven of $2 million as guaranteed under his life insurance and Consulting Agreement; (b) payment by Schnader to Vederman of $2 million as guaranteed under his life insurance and Consulting Agreement; (c) indemnification to all Plaintiffs of federal and state tax consequences for the transfer of the policies; (d) payment by Schnader for reimbursement to Sam Sidewater for his interest in the split dollar polices; (e) reimbursement to all Plaintiffs for the income tax paid with respect to premiums pai by Debtors predecessor; (f) punitive damages; and (g) attorney fees, and such other relief as may be appropriate and justified.

3597818_13

## NOTICE OF PRESERVATION OF EVIDENCE

PLAINTIFFS HEREBY DEMAND AND REQUEST THAT DEFENDANT TAKE ALL NECESSARY ACTION TO ENSURE THE PRESERVATION OF ALL DOCUMENTS, COMMUNICATIONS, AND DISCOVERABLE MATERIALS, INCLUDING ALL MARKETING AND SOLICITATION MEMBERSHIP MATERIALS, AND COMMUNICATIONS WITH THIRD PARTIES, WHETHER ELECTRONIC OR OTHERWISE, ITEMS AND THINGS IN THE POSSESSION OR CONTROL OF ANY PARTY TO THIS ACTION, OR ANY ENTITY OVER WHICH ANY PARTY TO THIS ACTION HAS CONTROL, OR FROM WHOM ANY PARTY TO THIS ACTION HAS ACCESS TO, ANY DOCUMENTS, ITEMS, OR THINGS WHICH MAY IN ANY MANNER BE RELEVANT TO OR RELATE TO THE SUBJECT MATTER OF THE CAUSES OF ACTION AND/OR THE ALLEGATIONS OF THIS COMPLAINT.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

**SPECTOR GADON ROSEN VINCI P.C.**

Paul R. Rosen, Esquire
Leslie Beth Baskin, Esquire
Andrew J. DeFalco, Esquire
Spector Gadon Rosen Vinci, P.C.
Philadelphia, Pennsylvania 19103
(215) 241-8888 (Main)
(215) 241-8844 (Fax)
*Attorneys for Plaintiffs*

Date:  October 13, 2022

27

3597818_13

## CERTIFICATION OF SERVICE

I, Paul R. Rosen, Esquire, hereby certify that a true and correct copy of Plaintiffs'

Complaint was served upon the following via hand-delivery on the date set forth below:

Lawrence G. McMichael, Chairman
Dilworth Paxson LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102

Richard A. Barkasy, Member
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286

By: /s/ Paul R. Rosen
_Attorney for Plaintiffs_

Date: October 13, 2022

3597818_13