# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN J. SIDEWATER, et al.,     :
           Plaintiffs,     :
            :
       v.     :
            :    **Civ. No. 22-4088**
SCHNADER HARRISON SEGAL &     :
LEWIS LLP,     :
           Defendant.     :
            :

## BRIEF IN SUPPORT OF
## MOTION TO DISMISS AND MOTION TO STRIKE

Lawrence G. McMichael, Esquire
Patrick M. Harrington, Esquire
Timothy J. Ford, Esquire
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-2101
Tel.: (215) 575-7000
Fax: (215) 575-7200
lmcmichael@dilworthlaw.com
pharrington@dilworthlaw.com
tford@dilworthlaw.com
*Attorneys for Defendant Schnader
Harrison Segal & Lewis LLP*

Dated: December 12, 2022

## <u>TABLE OF CONTENTS</u>

INTRODUCTION.................................................................................................1

FACTUAL BACKGROUND.............................................................................2

LEGAL STANDARD .......................................................................................4

LEGAL ARGUMENT.......................................................................................5

I.  Plaintiffs Cannot State a Claim for Breach of Contract. .................................5

II.  Plaintiffs Have Not Pleaded Recoverable Damages to State a Claim for

Professional Negligence. ...................................................................................6

   A.  Plaintiffs Have Not Pleaded Any Causal Connection to (1) an Alleged
Guaranteed Payment Under the Consulting Agreements or (2) Income
Taxes They Paid on the Premiums Charming Shoppes Paid to
Maintain the Life Insurance Policies.......................................................7

    1.  By Their Own Terms, the Consulting Agreements Have Expired,
Leaving No Obligation to Pay a $2 Million "Absolute Claim" Outside
the Death Benefits Under the Policies.......................................................8

    2.  Plaintiffs Have Not Pleaded Facts to Show that They Would Have,
Not Could Have, Been Able to Overcome the Rejection of the
Consulting Agreements in Bankruptcy Proceedings.............................10

    3.  Plaintiffs Cannot Claim Damages from Schnader Arising Out of Life
Insurance Policies that Have Already Been Transferred to Plaintiffs....12

    4.  There Is No Causal Connection Between Anything Schnader Did and
Taxes on Premiums Paid by Charming Shoppes....................................13

   B. Plaintiffs Have Not Pleaded Actual Loss Based on Either Hypothetical
Future Tax Liabilities or An Interest in Life Insurance Policies............14

    1.  Plaintiffs Cannot State a Claim Based on Hypothetical Future Tax
Liabilities.................................................................................................15

    2.  In the Alternative, Plaintiffs Cannot State a Ripe Case or Controversy
Based on Hypothetical Future Tax Liabilities. .......................................16

3.  Sam's Interest in the Life Insurance Policies Is Too Speculative and
Remote. ...................................................................................................17

III.  Plaintiffs Cannot State a Claim for Breach of Fiduciary Duty. ....................18

IV.  Plaintiffs Cannot State a Claim for Tortious Interference with Contract......19

V.  Plaintiffs' Declaratory Judgment Claim Should Be Dismissed as
Duplicative.....................................................................................................22

VI.  Plaintiffs Have Not Met the High Standard for Punitive Damages. .............22

VII.  Plaintiffs Have Not Pleaded Allegations to Support Attorney Fees. ............23

VIII.  Plaintiffs' Introduction Should Be Stricken as Redundant and Immaterial..24

**CONCLUSION AND RELIEF REQUESTED....................................................25**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abel v. Am. Art Analog, Inc.*,
838 F.2d 691 (3d Cir. 1988) ................................................................................20

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
561 F.3d 199 (3d Cir. 2009) ...............................................................................20

*In re Alpha Nat'l Res.*,
555 B.R. 520 (Bankr. E.D. Va. 2016)...................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................4, 5

*Bansley v. Appleton*,
No. 809 MD 2014, 2015 WL 7259000 (Pa. Super. Ct. May 4,
2015) ..................................................................................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................4

*Butta v. GEICO Cas. Co.*,
400 F. Supp. 3d 225 (E.D. Pa. 2019)..................................................................22

*Cole v. Cook*,
No. 1:06 CV 1811, 2006 WL 3791680 (N.D. Ohio Dec. 22, 2006) .................16

*Cook v. Gelman*,
No. 2184 EDA 2016, 2018 WL 989279 (Pa. Super. Ct. Feb. 21,
2018) ....................................................................................................................7

*Daines v. Alcatel, S.A.*,
105 F. Supp. 2d 1153 (E.D. Wash. 2000)...........................................................16

*Eckroth v. Pa. Elec., Inc.*,
12 A.3d 422 (Pa. Super. Ct. 2010)........................................................................8

*Equitable Life Assurance Soc'y v. Stitzel*,
445 A.2d 523 (Pa. Super. Ct. 1982)....................................................................17

*In re Estate of Hoffman*,
    54 A.3d 903 (Pa. Super. Ct. 2012)........................................................................17

*In re Estate of Sauers*,
    32 A.3d 1241 (Pa. 2011)......................................................................................18

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ..................................................................................4

*George A. Davis, Inc. v. Camp Trails Co.*,
    447 F. Supp. 1304 (E.D. Pa. 1978)......................................................................21

*Glenn v. Park Point Coll.*,
    272 A.2d 895 (Pa. 1971)......................................................................................21

*Gould Elecs. Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000) ..................................................................................5

*Green v. Altman*,
    No. CIV.A.03-6437, 2004 WL 2106552 (E.D. Pa. Sept. 21, 2004)...................13

*Huber v. Taylor*,
    469 F.3d 67 (3d Cir. 2006) ....................................................................................7

*Hudson v. Columbia Life Ins. Co*.,
    No. CV 20-5252, 2021 WL 2823074 (E.D. Pa. July 6, 2021) ...........................18

*Jones v. Baskin, Flaherty, Elliot & Mannino, P.C.*,
    670 F. Supp. 597 (W.D. Pa. 1987)......................................................................16

*Kituskie v. Corbman*,
    714 A.2d 1027 (Pa. 1998).........................................................................7, 8, 14

*Leet v. Vinglas*,
    531 A.2d 17 (Pa. Super. Ct. 1987)......................................................................10

*Lubrizol Enters. Inc. v. Richmond Metal Finishers, Inc.*,
    756 F.2d 1043 (4th Cir. 1985) .............................................................................11

*Lucchino v. Commonwealth*,
    809 A.2d 264 (Pa. 2002)......................................................................................24

*McDermott v. Party City Corp.*,
  11 F. Supp. 2d 612 (E.D. Pa. 1998)......................................................................19

*McMullen v. Kutz*,
  985 A.2d 769 (Pa. 2009)......................................................................................24

*Meyers v. Sudfield*,
  No. 05-CV-2970, 2007 WL 419182 (E.D. Pa. Feb. 2, 2007).............................23

*Morris v. Supplee*,
  57 A. 566 (Pa. 1904)............................................................................................13

*Myers v. Robert Lewis Seigle, P.C.*,
  751 A.2d 1182 (Pa. Super. Ct.), *appeal denied*, 795 A.2d 978 (Pa.
  2000) .......................................................................................................................8

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
  Civ. No. 12-3824, 2015 WL 1736957 (E.D. Pa. Apr. 16, 2015).........................20

*N.Y. Cent. Mut. Co. v. Edelstein*,
  637 F. App'x 70 (3d Cir. 2016) .............................................................................5

*Nelson v. Heslin*,
  806 A.2d 873 (Pa. Super. Ct. 2002), *appeal denied*, 831 A.2d 600
  (Pa. 2003)..............................................................................................................15

*Nkansah v. Kleinbard LLC*,
  Civ. A. No. 19-4472, 2020 WL 920269 (E.D. Pa. Feb. 26, 2020).............*passim*

*Nkansah v. Kleinbard LLC*,
  Civ. A. No. 19-4472, 2021 WL 1238892 (E.D. Pa. Apr. 1, 2021).......................8

*Nova Chemicals, Inc. v. Sekisui Plastics Co.*,
  No. 2:06cv478, 2008 WL 4170029 (W.D. Pa. Sept. 3, 2008), *aff'd*,
  579 F.3d 319 (3d Cir. 2009) ................................................................................10

*Pashak v. Barish*,
  450 A.2d 67 (Pa. Super. Ct. 1982).......................................................................14

*Quinten v. U.S. Steel Corp.*,
  142 A.2d 370 (Pa. Super. Ct. 1958).....................................................................17

*Rizzo v. Haines*,
   555 A.2d 58 (Pa. 1989)..........................................................................7, 8, 14, 23

*S.D. v. Haddon Heights Bd. of Educ.*,
   833 F.3d 389 (3d Cir. 2016) .................................................................................5

*Scanlan v. Kodak Retirement Income Plan*,
   678 F. Supp. 2d 110 (W.D.N.Y. 2010)................................................................16

*State Auto Ins. Co. v. Summy*,
   234 F.3d 131 (3d Cir. 2000) ...............................................................................22

*Sussman v. N.Y. Life Ins. Co.*,
   32 F.Supp. 88 (E.D. Pa. 1940)............................................................................17

*Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*,
   28 F. Supp. 2d 947 (E.D. Pa. 1998)....................................................................21

*Wyeth Pharms., Inc. v. Borough of W. Chester*,
   126 A.3d 1055 (Pa. Commw. Ct. 2015) .............................................................10

## Statutes

Declaratory Judgment Act, 28 U.S.C. § 2201(a)......................................................22

## Other Authorities

FED. R. CIV. P. 10(b)..................................................................................................25

FED. R. CIV. P. 12(b)(1).........................................................................................5, 16

FED. R. CIV. P. 12(b)(6)..............................................................................................4

FED. R. CIV. P. 12(f) .................................................................................................24

## INTRODUCTION

In this action, Plaintiffs seek to shift the consequences of their company's insolvency and the resulting rejection of Plaintiffs' consulting agreements and split-dollar life insurance policies in a bankruptcy proceeding onto their former law firm, Schnader Harrison Segal & Lewis LLP ("Schnader"). Plaintiffs' scattershot attempts to hold Schnader liable fail as a matter of law. The Complaint is rife with deficiencies, underscoring the implausibility and overreach of their claims:

- First, Plaintiffs cannot state a claim for breach of contract because Plaintiffs do not allege a breach of a specific provision of a contract for legal services.

- Second, Plaintiffs cannot state a claim for professional negligence because they have not sufficiently alleged damages. The Complaint: (a) fails to plead any causal connection to any alleged act or omission by Schnader; and (b) fails to plead actual loss that is not speculative or remote.

- Third, Plaintiffs cannot state a claim for breach of fiduciary duty because Plaintiffs do not allege any conflict or other disloyalty by Schnader for its own benefit.

- Fourth, Plaintiffs cannot state a claim for breach or tortious interference with contract because Plaintiffs do not allege that Schnader acted with the requisite intent to direct acts of third parties for the purpose of interference with either the consulting agreements or the life insurance policies.

- Fifth, Plaintiffs' request for a declaratory judgment should be dismissed as duplicative of their other claims.

- Sixth, Plaintiffs have failed to plead allegations that meet the high standard for punitive damages.

- Seventh, Plaintiffs have failed to plead allegations to authorize attorney fees.

- Finally, the "Introduction" should be stricken as redundant and an improper pleading to which a response is impossible.

This Court should grant Schnader's Motion to Dismiss and Motion to Strike and dismiss this case in its entirety.

## FACTUAL BACKGROUND

Until the late 1980s and early 1990s, Plaintiff Steven Sidewater ("Steven") served as Vice Chairman of the Board of Charming Shoppes, Inc., a retail apparel chain, and Plaintiff Herbert Vederman ("Vederman") served as its Executive Vice President. Compl. ¶¶ 17, 21. At the end of their employment, Steven and Vederman entered into Consulting Agreements with Charming Shoppes (the "Consulting Agreements"). *Id.* ¶ 21.

Both Consulting Agreements provided that Charming Shoppes would pay the premiums on life insurance policies for Steven and Vederman each having a $4 million death benefit. *Id.* Ex. 1 § 5.3; Ex. 2 § 6.2. The beneficiaries of each insured would receive the first $2 million of the death benefits with Charming Shoppes receiving the balance. *Id.* Both Agreements terminated in 1992. *Id.* Ex. 1 § 2; Ex. 2 § 3. The Vederman Agreement further provided that "[t]he obligations of the Company hereunder shall terminate on March 31, 1992 with respect to each of the Company's obligations hereunder," with no exception for the life insurance policies. *Id.* Ex. 2 § 7.

A third plaintiff, Samuel Sidewater ("Sam"), is Steven's brother and Vederman's cousin. Compl. ¶ 17. Plaintiffs allege that Charming Shoppes purchased

life insurance policies for Sam's benefit, *id.* ¶ 21, but do not allege that Sam had a consulting agreement like Steven or Vederman.

In 2012, Charming Shoppes was acquired by Retail Group, Inc. f/k/a Ascena Retail Group, Inc. ("Ascena"). *Id.* ¶ 22. Plaintiffs allege that "each of the Plaintiffs had negotiated a separate financial arrangement going forward with Charming Shoppes," but do not describe or otherwise document that financial arrangement. *Id.*

In 2020, Ascena filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Virginia. *Id.* ¶ 7. Plaintiffs allege that their first notice of the bankruptcy was December 20, 2020, when Steven received a proof of claim form with a bar date of January 19, 2021 for *administrative* claims. *Id.* ¶ 23. Ascena also provided information about Steven's life insurance policies. *Id.* (The bar date for general unsecured claims already passed in September 2020.) Schnader received this information on January 7, 2021. *Id.*

According to the Complaint, over the following weeks, Schnader partners communicated internally and with Plaintiffs and their financial advisor. *Id.* ¶¶ 24–27, 29–30, 33, 35, 39–43, 46–47. At several points, Schnader recommended that Plaintiffs retain a local Virginia bankruptcy attorney to find out information about the life insurance policies. *Id.* ¶ 27, 30, 46. He contacted Ascena's counsel, who advised him that Ascena had rejected them. *Id.* ¶¶ 47–48. Local counsel expressed Plaintiffs' interest in assuming the policies. *Id.* ¶ 48. The Complaint alleges that,

over the next year, Schnader worked to have the life insurance companies transfer ownership of the policies from Charming Shoppes to Plaintiffs so they could retain the benefits of the policies following the bankruptcy. *Id.* ¶ 54.

## LEGAL STANDARD

A court should grant a Rule 12(b)(6) motion to dismiss where the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Courts conduct a two-part analysis to determine whether dismissal is appropriate. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210–11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiffs have a "plausible claim for relief." *Id.* at 211; *see also Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 570. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly*, 550 U.S. at 545. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

4

at 570). This inquiry is context-specific and "requir[es] the reviewing court to draw on its experience and common sense." *Id.*[1]

## LEGAL ARGUMENT

### I.   Plaintiffs Cannot State a Claim for Breach of Contract.

The allegations in the Complaint do not state a claim for breach of contract. Plaintiffs assert that Schnader was negligent. They do not allege a breach of a specific provision of a contract for legal services. As numerous state and federal courts have held, a claim that a lawyer violated the standard of care sounds in tort, not contract. Thus, Count I should be dismissed with prejudice.

Pennsylvania's gist of the action doctrine precludes Plaintiffs from bringing a contract claim that is actually a tort claim. *Nkansah v. Kleinbard LLC*, Civ. A. No. 19-4472, 2020 WL 920269, at \*3 (E.D. Pa. Feb. 26, 2020) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa. 2014)). Legal malpractice sounds in contract only when a plaintiff alleges that the lawyer breached a specific contractual undertaking. *N.Y. Cent. Mut. Co. v. Edelstein*, 637 F. App'x 70, 73 (3d Cir. 2016).

Here, the Complaint does not identify any specific contractual undertaking by

---

[1] Schnader alternatively seeks dismissal of certain damages claims for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) as not a ripe controversy. Defendants' challenge is facial because it "contest[s] the sufficiency of the pleadings" as a basis for the court's subject-matter jurisdiction. *S.D. v. Haddon Heights Bd. of Educ.*, 833 F.3d 389 n.5 (3d Cir. 2016). Accordingly, the applicable standard is similar to the rest of Schnader's arguments: a court reviewing such a challenge may "only consider the allegations of the complaint," which it takes to be true, and "documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

Schnader.

Instead, Plaintiffs' allegations suggest only acts falling below a standard of care. Plaintiffs allege that "Schnader . . . w[as] careless and reckless and should have acted then to file a Motion for Relief or similar motion" and that "Schnader . . . acted with careless and reckless disregard." *E.g.*, Compl. ¶¶ 42, 62, 65–66. A breach of a standard of care sounds in tort, not contract. Accordingly, the gist of the action doctrine precludes Plaintiffs from asserting a claim for breach of contract based on the allegations in the Complaint. Count I should be dismissed with prejudice.

## II. Plaintiffs Have Not Pleaded Recoverable Damages to State a Claim for Professional Negligence.

In their Complaint, Plaintiffs seek a laundry list of damages disconnected from any alleged act or omission by Schnader. In Count II, Plaintiffs demand that Schnader: (1) pay $2 million each for Steven and Vederman under their respective Consulting Agreements; (2) indemnify Plaintiffs for hypothetical taxes and other unspecified costs arising out of the transfer of the insurance policies from Ascena to Plaintiffs; (3) reimburse Sam for his interest in his life insurance policies; and (4) reimburse Plaintiffs for taxes they paid for premiums paid by Charming Shoppes years before the issues raised in the Complaint. Compl. ¶ 72; *see also id.* ¶¶ 68, 76, 81 & p.26.

As an initial matter, Plaintiffs are required to plead recoverable damages to

state a claim for professional negligence.[2] "In order to establish a claim of legal malpractice, a plaintiff/aggrieved client must demonstrate three basic elements: 1) employment of the attorney or other basis for a duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff." *Kituskie v. Corbman*, 714 A.2d 1027, 1029 (Pa. 1998) (citing *Rizzo v. Haines*, 555 A.2d 58, 65 (Pa. 1989)). But Plaintiffs' wish list of damages does not meet well-established standards in Pennsylvania law. Without damages, Plaintiffs have failed to state a claim for professional negligence.

### A. Plaintiffs Have Not Pleaded Any Causal Connection to (1) an Alleged Guaranteed Payment Under the Consulting Agreements or (2) Income Taxes They Paid on the Premiums Charming Shoppes Paid to Maintain the Life Insurance Policies.

Plaintiffs cannot plead a causal connection between any acts or omissions by Schnader to two categories of damages. First, Plaintiffs construe the $2 million referenced in the Consulting Agreements to be some sort of guaranty by Charming Shoppes. It is not. The Agreements plainly state that the beneficiaries of Steven and Vederman would receive the first $2 million of death benefits. Putting aside Plaintiffs' rewriting of the Consulting Agreements, they do not alleged that there

---

[2] The arguments *infra* in Section II apply equally to any cause of action that requires Plaintiffs to plead damages as an element of the cause of action, including breach of contract, breach of fiduciary duty, and tortious interference with contract, and to the extent that Plaintiffs seek a declaration of damages. *See, e.g.*, *Huber v. Taylor*, 469 F.3d 67, 77 (3d Cir. 2006) ("Pennsylvania law seem[s] to indicate that claims for breach of fiduciary duty require actual harm."); *Cook v. Gelman*, No. 2184 EDA 2016, 2018 WL 989279, at *3 (Pa. Super. Ct. Feb. 21, 2018) (holding that "actual loss" is required for breach of fiduciary duty).

was anything Schnader could have done to preserve their claim. Second, Steven and Vederman were deemed to have received a taxable benefit when Charming Shoppes paid premiums to maintain the policies. Again, they do not plead any causal connection between Schnader's advice, or anything that Schnader did, and the tax liability for premiums paid on their behalf. Thus, Plaintiffs have failed to state a claim. *Kituskie*, 714 A.2d at 1029 (citing *Rizzo*, 555 A.2d at 65).

Pennsylvania courts have consistently required legal malpractice plaintiffs to show that the harm claimed would not have occurred "but for" the conduct of the defendant attorney. *Myers v. Robert Lewis Seigle, P.C.*, 751 A.2d 1182, 1185 (Pa. Super. Ct.), *appeal denied*, 795 A.2d 978 (Pa. 2000); *Eckroth v. Pa. Elec., Inc.*, 12 A.3d 422, 428 (Pa. Super. Ct. 2010). The burden is on the malpractice plaintiff to prove "that the attorney's negligence caused him to lose the case he otherwise *would* have, not *could* have, won." *Nkansah v. Kleinbard LLC*, Civ. A. No. 19-4472, 2021 WL 1238892, at *3 (E.D. Pa. Apr. 1, 2021) (citing *Myers*, 751 A.2d at 1185). Here, Plaintiffs have made no attempt to do so, and cannot do so.

### 1. By Their Own Terms, the Consulting Agreements Have Expired, Leaving No Obligation to Pay a $2 Million "Absolute Claim" Outside the Death Benefits Under the Policies.

The Consulting Agreements provide that Steven's and Vederman's beneficiaries are entitled to the first $2 million of death benefits with the remainder to Charming Shoppes when they died. Compl. Ex. 1 § 5.3; Ex. 2 § 6.2. But Plaintiffs

appear to allege that Charming Shoppes undertook an obligation to pay Steven and Vederman $2 million each, irrespective of life insurance benefits, which they characterize as an "absolute claim." *See* Compl. ¶ 62. But there is nothing in the Consulting Agreements that provides for the survival of the "absolute claim" unrelated to life insurance benefits after the termination of the Consulting Agreements, which expired long ago.

Steven's Agreement provided for a term from May 15, 1989 to May 14, 1992. *Id.* Ex. 1 § 2. Vederman's Agreement provided a term from March 30, 1991 to March 31, 1992 (which could have been extended by six months at Charming Shoppes' option only, but was not). *Id.* Ex. 2 §§ 3, 7. The Vederman Agreement further provided that "[t]he obligations of the Company hereunder shall terminate on March 31, 1992 with respect to each of the Company's obligations hereunder," with no exception for the life insurance policies. *Id.* Ex. 2 § 7.

Contrary to Plaintiffs' allegations, therefore, any "absolute claim" owed to Steven or Vederman had expired *several decades* before the Ascena bankruptcy. The Complaint does not allege that any obligation for Charming Shoppes to maintain the policies was intended to last beyond the term of the contract, nor do the Consulting Agreements contain a term that exempts this alleged obligation from the expiration of the contract.  No alleged act or omission by Schnader in connection with the bankruptcy could have impacted the alleged "absolute claim" because such claim

had already expired decades earlier.

Under Pennsylvania law, any claim for a $2 million guaranteed payout under the Consulting Agreements did not survive the respective contract terms. *Wyeth Pharms., Inc. v. Borough of W. Chester*, 126 A.3d 1055, 1064 (Pa. Commw. Ct. 2015); *see also Leet v. Vinglas*, 531 A.2d 17, 22 (Pa. Super. Ct. 1987).

Without an unequivocal provision that this alleged benefit did not expire with the rest of the contract, the "absolute claim" cannot overcome the stated term of the contract. In *Nova Chemicals, Inc. v. Sekisui Plastics Co.*, the defendants argued that a contract term—barring sales in Asian markets—did not independently state an expiration, notwithstanding a term of years in the contract. No. 2:06cv478, 2008 WL 4170029, at *9 (W.D. Pa. Sept. 3, 2008), *aff'd*, 579 F.3d 319 (3d Cir. 2009). The *Nova* court concluded that the defendants' argument "is in conflict with the applicable Pennsylvania law." *Id.* at *10. The court reasoned that "there is no expressed or even implied basis to support the notion that the agreement sought to impose a permanent prohibition on sales in the Asian market." *Id.* As in *Nova*, any claim to a $2 million payout from the death benefits payable under the policies cannot overcome the express terms the contract. Thus, Plaintiffs cannot state claims based on these alleged damages.

### 2. Plaintiffs Have Not Pleaded Facts to Show that They Would Have, Not Could Have, Been Able to Overcome the Rejection of the Consulting Agreements in Bankruptcy Proceedings.

10

Next, Plaintiffs allege that Schnader should have objected to the debtor's rejection of the Consulting Agreements and the policies in the Ascena bankruptcy proceedings. But Plaintiffs have not pleaded facts that meet the standard to overcome the court's deference to a trustee's or debtor-in-possession's judgment in rejecting contracts in bankruptcy. Without those allegations, Plaintiffs cannot establish that any alleged act or omission by Schnader in the bankruptcy proceedings was the proximate cause of the damages sought by Plaintiffs.

Here, Plaintiffs have not alleged facts that an objection to the bankruptcy trustee's rejection of the contracts would have been successful—and very likely cannot do so. For bankruptcy proceedings in the Eastern District of Virginia, "[t]he Fourth Circuit has determined that a debtor's decision to assume or reject a contract should be 'accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors.'" *In re Alpha Nat'l Res.*, 555 B.R. 520, 529–30 (Bankr. E.D. Va. 2016) (quoting *Lubrizol Enters. Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir. 1985)). "A court should not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract . . . unless there is a *showing of bad faith or gross abuse of discretion*" by the *debtor*. *Id.* (quoting *Lubrizol Enters.*, 756 F.2d at 1047) (emphasis added). But Plaintiffs have not pleaded facts that establish bad faith or gross abuse of discretion by Charming

11

Shoppes (as debtor-in-possession) in deciding to reject the Consulting Agreements (for which no consulting service were being provided because they expired *three decades ago*) or the life insurance policies. Without those allegations, Plaintiffs cannot show that any act or omission by Schnader in the bankruptcy proceedings regarding rejection of the contracts was the proximate cause of the damages alleged by Plaintiffs. Even if Schnader had objected to rejection of the agreements and/or the policies, the outcome would have been the same.

### 3. Plaintiffs Cannot Claim Damages from Schnader Arising Out of Life Insurance Policies that Have Already Been Transferred to Plaintiffs.

Plaintiffs' claim that Schnader is liable for the $2 million payout from the life insurance policies fails for a third reason: the ownership of the life insurance policies—and with it, their benefits—has already been transferred to Plaintiffs. The Complaint alleges that Schnader "effectuate[d] the transfer of the insurance policies from Charming Shoppes to Plaintiffs." Compl. ¶ 54. Indeed, the transfer is the basis for Plaintiffs' claims of tax liability.

The transfer of the insurance policies entitles Plaintiffs to their benefits. The $2 million payout provided in the Consulting Agreements is explicitly payable from the net death benefits payable under the insurance policies. The net benefit is the gross life insurance payout less any policy loans taken out by Charming Shoppes or its successor. Plaintiffs cannot hold Schnader liable for a payment that their

12

designated beneficiaries will already receive upon their deaths. Schnader had nothing to do with the policy loans or other circumstances effecting the policy payout, and none is alleged in the Complaint.[3]

### 4. There Is No Causal Connection Between Anything Schnader Did and Taxes on Premiums Paid by Charming Shoppes.

Plaintiffs also claim damages for "reimbursement to all Plaintiffs for the income tax they paid with respect to premiums paid by Debtor[']s predecessor." Compl. ¶¶ 68, 72, 76, 81 & p. 26. As an initial matter, the Complaint contains no allegation that Plaintiffs paid income tax on policy premiums previously paid by "Debtor[']s predecessor," Charming Shoppes. The Complaint does, however, allege that Charming Shoppes was acquired by Ascena in 2012, *id.* ¶ 22—eight years before the first allegation related to the Ascena bankruptcy, let alone any alleged wrongdoing by Schnader. *Id.* ¶ 23.

Accordingly, to the extent that Plaintiffs are claiming that Schnader owes them for any income tax on premiums paid by Charming Shoppes before they were even acquired by Ascena, there can be no causal connection between any acts or omissions by Schnader beginning with Ascena's bankruptcy in 2020. Any income

---

[3] Obviously, Plaintiffs are not entitled to double recovery, once from the proceeds of the life insurance policies from the life insurance companies and once from Schnader. *See Morris v. Supplee*, 57 A. 566, 568 (Pa. 1904) ("[A prevailing plaintiff is] entitled to compensation for their actual loss, but nothing more."); *see also Green v. Altman*, No. CIV.A.03-6437, 2004 WL 2106552, at *9 (E.D. Pa. Sept. 21, 2004) (law seeks to "prevent double recovery for a single wrong").

tax that Plaintiffs paid on premiums paid by Charming Shoppes pre-dated any alleged wrongdoing by Schnader.[4] Thus, Plaintiffs have not stated claims to recover income tax paid on premiums paid by Charming Shoppes prior to and disconnected from any allegations about Schnader.

### B. Plaintiffs Have Not Pleaded Actual Loss Based on Either Hypothetical Future Tax Liabilities or An Interest in Life Insurance Policies.

Plaintiffs have also failed to plead actual damages for two other categories of damages: hypothetical taxes and other unspecified costs arising out of the transfer of the insurance policies from Charming Shoppes to Plaintiffs and Sam's interest in the life insurance policies. Plaintiffs cannot state claims without pleading actual loss.

"An essential element" to these causes of action "is proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm." *Kituskie*, 714 A.2d at 1030. Damages are considered remote or speculative if there is uncertainty concerning the identification of the existence of damages, not just the inability to precisely calculate the amount or value of damages. *Rizzo*, 555 A.2d at 86; *Pashak v. Barish*, 450 A.2d 67, 69 (Pa.

---

[4] Nor is there any causal connection between the Complaint's allegations against Schnader and any income tax payable by Plaintiffs for premiums paid by Charming Shoppes *after* it was acquired by Ascena. There are no allegations in the Complaint establishing that Schnader had anything to do with the payment of these premiums, that Plaintiffs did not want these premiums paid to preserve the death benefits payable under the policies, or that the taxes could have been avoided had Schnader acted differently. That Plaintiffs include these taxes as part of their damages underscores the absurdity and overreach of their claims.

Super. Ct. 1982); *Nelson v. Heslin*, 806 A.2d 873, 876 (Pa. Super. Ct. 2002), *appeal denied*, 831 A.2d 600 (Pa. 2003).

Plaintiffs' remaining categories of damages are too remote or speculative. First, hypothetical future tax liabilities are too speculative and too dependent on a variety of unknown, additional factors. In the alternative, Plaintiffs cannot plead a ripe controversy over hypothetical future tax liabilities. Finally, as explained below, Sam's mere interest in the life insurance policies is too speculative or remote for Plaintiffs to state a claim. For each of these reasons, Plaintiffs have not stated claims based on these damages.

### 1. Plaintiffs Cannot State a Claim Based on Hypothetical Future Tax Liabilities.

Plaintiffs cannot recover damages based on hypothetical future tax liabilities. Plaintiffs seek "payment by Schnader for indemnification to all Plaintiffs of taxes and other costs." Compl. ¶¶ 68, 72, 76, 81 & p. 26. But there are no allegations that Plaintiffs have paid or even been assessed with any such taxes or costs. Accordingly, Plaintiffs' claims are no more than a threat of future harm that fails to establish damages. Plaintiffs' claim for indemnification of taxes and other costs falls squarely outside the definition of actual damages.

The potential tax liability on the transfer of a split-dollar life insurance policy is complicated to determine. Without an actual tax return or some other assessment by the Internal Revenue Service, it is impossible to determine damages, if any, from

an increase in taxable income. Therefore, there is uncertainty concerning the existence of damages altogether, not just an inability to calculate precisely the amount or value of damages. Plaintiffs cannot state a claim based on the threat of future tax liabilities.

### 2. In the Alternative, Plaintiffs Cannot State a Ripe Case or Controversy Based on Hypothetical Future Tax Liabilities.

Viewed another way, Plaintiffs lack standing to bring a claim based on hypothetical future tax liability, as such liability does not create a concrete or imminent case or controversy. *See Scanlan v. Kodak Retirement Income Plan*, 678 F. Supp. 2d 110, 114 (W.D.N.Y. 2010) (dismissing claim for damages relating to the potential taxation of employee benefits if the subject benefit plan were to lose its tax-qualified status); *Cole v. Cook*, No. 1:06 CV 1811, 2006 WL 3791680, at *3 (N.D. Ohio Dec. 22, 2006) (dismissing plaintiffs' claim for indemnification from defendant for alleged negative tax consequences of company's loss of S corporation status); *Daines v. Alcatel, S.A.*, 105 F. Supp. 2d 1153, 1155 (E.D. Wash. 2000) (dismissing plaintiff's contract claim for advancement of funds to "cover" potential tax liability as "clearly unripe"); *Jones v. Baskin, Flaherty, Elliot & Mannino, P.C.*, 670 F. Supp. 597, 599–600 (W.D. Pa. 1987) (dismissing RICO claim for lack of standing because "the hypothetical possibility of a future tax prosecution does not present a ripe dispute for this court").

Under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs bear the burden of

establishing a ripe case or controversy sufficient to confer standing. They have not pleaded sufficient facts to show a concrete or imminent harm. Thus, Plaintiffs have failed to establish a ripe case or controversy, and any claim for indemnification of hypothetical future tax liability should be dismissed.

### 3. Sam's Interest in the Life Insurance Policies Is Too Speculative and Remote.

Plaintiffs seek damages for "reimbursement to Sam Sidewater for his interest in the split dollar policies." Compl. ¶¶ 68, 72, 76, 81 & p. 26. In the Complaint, Plaintiffs allege that Charming Shoppes purchased certain life insurance policies for Sam's benefit, with no reference to any contractual or other obligation to do so. *Id.* ¶ 21.c. Unlike Steven or Vederman, Sam did not have a consulting agreement. But a mere interest in a life insurance policy does not become a vested right until the death of the insured. Therefore, Sam's interest in the life insurance policies is too speculative and remote to state a claim on Sam's behalf.

Pennsylvania courts have long held that "[i]t is clear that the mere naming of a beneficiary on a life insurance policy vests nothing in that person." *Equitable Life Assurance Soc'y v. Stitzel*, 445 A.2d 523, 525 (Pa. Super. Ct. 1982), *superseded by statute on other grounds*, *In re Estate of Hoffman*, 54 A.3d 903 (Pa. Super. Ct. 2012). "The beneficiary's mere expectance becomes a vested right . . . only upon the death of the insured." *Quinten v. U.S. Steel Corp.*, 142 A.2d 370, 374–75 (Pa. Super. Ct. 1958); *see also Sussman v. N.Y. Life Ins. Co.*, 32 F.Supp. 88, 88–89 (E.D. Pa. 1940)

(named beneficiary has no vested interest in policy or its proceeds during insured's lifetime). Pennsylvania courts have recognized that "life insurance policies from which proceeds are distributed are the decedent's personal property *at the time of his death*." *Hudson v. Columbia Life Ins. Co*., No. CV 20-5252, 2021 WL 2823074, at *2 (E.D. Pa. July 6, 2021) (emphasis added) (quoting *In re Estate of Sauers*, 32 A.3d 1241, 1249 (Pa. 2011)). Put otherwise, a beneficiary has a right to the benefits under a life insurance policy only after the death of the insured.

Here, Sam is the policies' insured—not their beneficiary—and is still alive. He therefore has no right to the proceeds of the life insurance policies, which will be paid upon his death to the designated beneficiaries. Nor can Schnader be liable for the proceeds payable in the future to his beneficiaries. Until the conditions for payment of proceeds are satisfied, Sam's interest in the life insurance policies is too remote or speculative. Sam should be dismissed from the case.[5]

## III.   Plaintiffs Cannot State a Claim for Breach of Fiduciary Duty.

Plaintiffs also fail to state a claim for a separate breach of an unspecified fiduciary duty. Fiduciary duties include duties of care and loyalty. *Nkansah*, 2020 WL 920269, at *6. Plaintiffs' professional negligence claim already concerns breach of a standard of care. Accordingly, Pennsylvania courts "interpret a claim for breach

---

[5] This claim also fails because, like Steven and Vederman, Sam now owns the policies and all of their associated benefits.  He, therefore, has suffered no damages with respect to his alleged "interests" in the policies and there is simply nothing for Schnader to "reimburse."

of fiduciary duty in the context of legal malpractice as a claim for breach of the duty of loyalty, not the duty of care." *Id.* To establish a breach of fiduciary duty, Plaintiffs must allege: "(1) the defendants negligently or intentionally failed to act in good faith and solely for their benefit; (2) he suffered injury; and (3) the defendants' failure to act solely for his benefit was a real factor in bringing about his injury." *Id.* (citing *Bansley v. Appleton*, No. 809 MD 2014, 2015 WL 7259000, at \*6 (Pa. Super. Ct. May 4, 2015); and *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998)).

The Complaint alleges that Schnader breached its fiduciary duty by "fail[ing] to preserve the administrative and/or other claims of Plaintiffs in the Ascena bankruptcy and failure to perform due diligence in assessing the significant costs, tax consequences, *etc.* of transferring Plainitffs['] life insurance policies from Debtor to Plaintiffs themselves." Compl. ¶ 76. No allegations in the Complaint demonstrate or even infer disloyalty, such as a conflict of interest or taking action to benefit itself. Without an allegation of disloyalty supported by facts, Plaintiffs cannot state a claim for breach of fiduciary duty in the professional negligence context. Thus, this Court should dismiss Count III with prejudice as well.

## IV. Plaintiffs Cannot State a Claim for Tortious Interference with Contract.

Next, Plaintiffs have not stated a claim for tortious interference with contract. Plaintiffs have not pleaded facts to establish that Schnader acted with the requisite

intent to direct acts at third parties for the purpose of interference with either the Consulting Agreements[6] or the life insurance policies.

To state a claim for tortious interference with contract, Plaintiffs must allege: "(1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, Civ. No. 12-3824, 2015 WL 1736957, at \*17 (E.D. Pa. Apr. 16, 2015) (quoting *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009)).

Plaintiffs have not even tried to plead the second element: purposeful action by Schnader specifically intended to harm an existing relationship. Plaintiffs make the conclusory allegations that "Schnader took purposeful, intentional and wrongful

---

[6] To the extent that Plaintiffs base their tortious interference with contract claim on the Consulting Agreements, the Agreements had already expired well before any alleged wrongdoing by Schnader, for reasons set forth *supra* in Section II.A.1. A defendant cannot be liable for tortious interference with a contractual relationship no longer in force. *See Abel v. Am. Art Analog, Inc.*, 838 F.2d 691, 697 (3d Cir. 1988) ("[U]nder Pennsylvania law there can be no wrongful interference with a non-existent partnership."). Thus, Plaintiffs have failed to state a claim for tortious interference with contract based on the Consulting Agreements for this additional reason.

actions in reckless and careless disregard of their knowing exposures, specifically intended to harm that existing relation, to the detriment of Plaintiffs." Compl. ¶ 79. "It is not sufficient, however, to show that the defendant intentionally breached its contract. A plaintiff must show that the defendant acted for the malevolent purpose of interfering with the plaintiff's existing . . . business relationships." *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 951 (E.D. Pa. 1998) (citing *George A. Davis, Inc. v. Camp Trails Co.*, 447 F. Supp. 1304, 1310–11 (E.D. Pa. 1978); and *Glenn v. Park Point Coll.*, 272 A.2d 895, 899 (Pa. 1971)). In *Glenn*, the Pennsylvania Supreme Court rejected a similar allegation that a defendant "intentionally, wrongfully, maliciously, fraudulently, deceitfully and without justification interfered with and precluded and prevented plaintiffs from entering into the relationship of brokers in the transaction" because it was not "a sufficient allegation of specific intent." *Glenn*, 272 A.2d at 899.

Like in *Glenn*, the Complaint falls short of these standards. Plaintiffs do not plead that Schnader acted for the malicious purpose of interfering with the Consulting Agreements or life insurance policies that were not known to and specifically authorized by Plaintiffs—including contacting the debtors and the insurance companies to facilitate transfer of the policies, as demonstrated in e-mails attached to the Complaint. Plaintiffs' conclusory allegation fails to state a claim for intentional interference with contract. Plaintiffs' claim should be dismissed.

## V. Plaintiffs' Declaratory Judgment Claim Should Be Dismissed as Duplicative.

Plaintiffs' last count, for a declaratory judgment, should be dismissed as duplicative of their other claims. Under the Declaratory Judgment Act, a court "*may declare the rights and other legal relations of any interested party.*" 28 U.S.C. § 2201(a). "Courts have discretion to entertain or dismiss declaratory judgment actions when they duplicate other claims." *Nkansah*, 2020 WL 920269, at *7 (citing *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 231 (E.D. Pa. 2019); and *State Auto Ins. Co. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000)). "A declaratory judgment claim is 'duplicative' of another claim where they both necessarily involve resolution of the same issues and ultimately result in the same relief." *Id.* (citing *Butta*, 400 F. Supp. 3d at 233).

There can be no question that Plaintiffs seek the same relief in their declaratory judgment request as their other claims. Indeed, the prayer for relief following the request for declaratory judgment restates the same relief as their preceding claims for damages. Compl. ¶¶ 68, 72, 78, 81. Therefore, Plaintiffs' request for a declaratory judgment should be dismissed as duplicative of their other claims.

## VI. Plaintiffs Have Not Met the High Standard for Punitive Damages.

The allegations in the Complaint simply do not meet the high standard in Pennsylvania law to recover punitive damages in a malpractice action. To state a

claim for punitive damages, Plaintiffs must not only prove their underlying claims, but they must allege the higher standard that the defendant's conduct was "outrageous." *Rizzo*, 555 A.2d at 69. The conduct must have been malicious, wanton, reckless, willful, or oppressive to support punitive damages. *Id.* The actor's state of mind must have been intentional, reckless, or malicious. *Id.* Plaintiffs must plead a plausible allegation of an attorney's evil motive or reckless indifference to the rights of the client for the punitive damages claim to survive judgment as a matter of law. *See id.*; *Meyers v. Sudfield*, No. 05-CV-2970, 2007 WL 419182, at *12–13 (E.D. Pa. Feb. 2, 2007).

The Complaint does not contain any allegation sufficient to meet the high standard for punitive damages. The Complaint details communications by Schnader throughout 2021, including to attorneys barred in Virginia and a local Virginia bankruptcy lawyer that show Schnader was attempting (in good faith) to address Plaintiffs' concerns about the Ascena bankruptcy. *E.g.*, Compl. ¶¶ 43, 46. The allegations do not plead an evil motive or reckless indifference to Plaintiffs' rights. Thus, Plaintiffs' claim for punitive damages should be dismissed at this stage of the proceedings.

## VII.   Plaintiffs Have Not Pleaded Allegations to Support Attorney Fees.

Nor does the Complaint contain sufficient allegations to support a claim for attorney fees. "Pennsylvania follows the American Rule. Absent bad faith or

vexatious conduct, 'each side is responsible for the payment of its own costs and counsel fees.'" *Nkansah*, 2020 WL 920269, at \*8 (quoting *Lucchino v. Commonwealth*, 809 A.2d 264, 267 (Pa. 2002)). "To award attorneys' fees in the absence of bad faith, there must be either statutory authorization, agreement between the parties or another established exception." *Id.* (citing *McMullen v. Kutz*, 985 A.2d 769, 775 (Pa. 2009)).

Plaintiffs have not pleaded allegations of bad faith, vexatious conduct, an applicable statutory authorization, agreement between the parties, or any other exception. Without such allegations, Plaintiffs cannot claim attorney fees incurred in this case from Schnader. In sum, Plaintiffs have not alleged facts to support their claimed damages as a matter of law. Thus, the Complaint should be dismissed in its entirety.

## VIII. Plaintiffs' Introduction Should Be Stricken as Redundant and Immaterial.

Finally, Plaintiffs' "Introduction" should be stricken as redundant and immaterial pursuant to Federal Rule of Civil Procedure 12(f). "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Plaintiffs' "Introduction" is effectively a two-page press release characterizing their allegations against Schnader as "monumental" before repeating their allegations in numbered paragraphs. The Federal Rules of Civil Procedure require Plaintiffs to "state [their] claims or defenses in numbered

paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Accordingly, the "Introduction" not only is redundant of the allegations in the Complaint, but also fails to comply with the Federal Rules of Civil Procedure. The "Introduction" should be stricken because, as written, it is impossible for defendant to respond to it in accordance with the pleading standards of the Federal Rules.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Defendant Schnader Harrison Segal & Lewis LLP respectfully requests this Court grant the Motion to Dismiss and Motion to Strike and dismiss the Complaint.

Respectfully submitted,

**DILWORTH PAXSON LLP**

 /s/ *Lawrence G. McMichael*
Lawrence G. McMichael, Esquire
Patrick M. Harrington, Esquire
Timothy J. Ford, Esquire
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-2101
Tel.: (215) 575-7000
Fax: (215) 575-7200
lmcmichael@dilworthlaw.com
pharrington@dilworthlaw.com
tford@dilworthlaw.com

Dated: December 12, 2022     *Attorneys for Defendant Schnader Harrison Segal & Lewis LLP*