## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEVEN J. SIDEWATER,** **SAMUEL I. SIDEWATER, and** **HERBERT T. VEDERMAN** *Plaintiffs,* | : **CIVIL ACTION NO. 2:22-cv-** : **04088-PD** : : : |
| v. | : **JURY TRIAL DEMANDED** : |
| **SCHNADER HARRISON SEGAL** **& LEWIS LLP** *Defendant.* | : : : : |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS AMENDED COMPLAINT OF DEFENDANT <u>SCHNADER HARRISON SEGAL & LEWIS, LLP</u>

Paul R. Rosen, Esquire
Leslie B. Baskin, Esquire
Andrew J. DeFalco, Esquire
**SPECTOR GADON ROSEN VINCI, P.C.**
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
(215) 241-8888 (Main)
(215) 241-8844 (Fax)
prosen@sgrvlaw.com
lbaskin@sgrvlaw.com
adefalco@sgrvlaw.com
Counsel for Plaintiffs

Dated:  February 14, 2023

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................. 1

II.  FACTS ........................................................................... 2

III.  LEGAL ARGUMENT ........................................................ 2

    A.  STANDARD OF REVIEW ................................................ 2

    B.  THE GIST OF THE ACTION DOCTRINE DOES NOT BAR PLAINTIFFS' BREACH OF CONTRACT CLAIM ........................................... 3

    C.  THE MOTION TO DISMISS BASED ON LACK OF CAUSATION FAILS ......... 6

    D.  THE MOTION TO DISMISS BASED ON "HYPOTHETICAL" DAMAGES FAILS ................................................................. 11

    E.  THE MOTION TO DISMISS FOR LACK OF "IMMINENT HARM" FAILS .... 18

    F.  THE MOTION TO DISMISS FOR "REMOTENESS" SEES TO REWRITE THE COMPLAINT ........................................................ 20

    G.  THE MOTION TO DISMISS PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY MUST BE DENIED .................................................. 21

    H.  THE MOTION TO DISMISS PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM FAILS ............................................................... 23

    I.  THE MOTION TO DISMISS PLAINTIFFS' DECLARATORY JUDGMENT CLAIM FAILS ............................................................... 24

    J.  ATTORNEY'S FEES ARE RECOVERABLE IN A LEGAL MALPRACTICE CASE ................................................................. 24

IV.  CONCLUSION ................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

### <u>Case Law</u>

<u>AMCO Ins. Co. v. Emery & Associates, Inc.</u>,
   926 F. Supp. 2d 634 (W.D. Pa. 2013)................................................................... 14

<u>ASTech Int'l, LLC v. Husick</u>,
   676 F. Supp. 2d 389 (E.D. Pa. 2009) ................................................................... 15

<u>Bailey v. Tucker</u>,
   621 A.2d 108 (Pa. 1993) ...................................................................................... 25

<u>Bandy v. Frank</u>,
   2008 WL 11515987 (E.D. Pa. Oct. 29, 2008) ................................................... 6, 7

<u>Bayview Loan Svc., LLC v. Richard M. Squire & Assocs.</u>,
   2010 WL 5122003 (E.D. Pa. Dec. 14, 2010)................................................6-8, 22

<u>B & D Masonry, Inc. v. Green</u>,
   2013 WL 4532791 (E.D. Pa. Aug. 26, 2013) ...................................................... 25

<u>Bert Co. v. Turk</u>,
   257 A.3d 93 (Pa.Super. 2021).................................................................................. 4

<u>Bruno v. Erie Insurance Company</u>,
   106 A.3d 48 (Pa. 2014) ........................................................................................ 3, 4

<u>Curran v. Stradley, Ronon</u>,
   521 A.2d 451 (Pa.Super. 1987) ........................................................................... 13

<u>Deitrick v. Costa</u>,
   849 Fed. Appx. 362 (3d Cir. 2021)...................................................................... 14

<u>Dinger v. Allfirst Financial, Inc.</u>,
   82 Fed. App'x 261 (3d Cir.2003) ........................................................................ 21

<u>Eshelman v. Agere Sys., Inc.</u>,
   554 F.3d 426 (3d Cir. 2009) .................................................................. 12, 16, 19

FCS Capital LLC v. Thomas,
　　579 F. Supp. 3d 635 (E.D. Pa. 2022) ................................................................. 6

Gen. Nutrition Corp. v. Gardere Wynne Sewell, LLP,
　　2008 WL 4411951 (W.D. Pa. Sept. 23, 2008) ..................................................... 6

Goode v. Gioria,
　　590 Fed. Appx. 120 (3d Cir. 2014) ..................................................................... 18

Hall v. Hall,
　　753 Fed. Appx. 96 (3d Cir. 2018) ........................................................ 12, 16, 18-20

Knopick v. Downey,
　　2014 WL 1339661 (M.D. Pa. Apr. 3, 2014) ......................................................... 7

Loesch v. City of Phila.,
　　2008 WL 2557429 (E.D. Pa. June 25, 2008) ................................................. 12 16

Malley-Duff & Assocs. v. Crown Life Ins.,
　　734 F.2d 133 (3d Cir. 1984) ............................................................................... 13

New Falls Corp. v. Lerner,
　　2006 WL 2801459 (D. Conn. Sept. 28, 2006) .................................................... 20

New York Cent. Mut. Ins. Co. v. Edelstein,
　　637 Fed. Appx. 70 (3d Cir. 2016) ................................................................... 3, 4

Nkansah v. Kleinbard LLC,
　　2020 WL 920269 (E.D. Pa. Feb. 26, 2020) ......................................................... 5

Odyssey Waste Servs., LLC v. BFI Waste Sys. of N. Am., Inc.,
　　2005 WL 3110826 (E.D. Pa. Nov. 18, 2005) ...................................................... 23

Pashak v. Barish,
　　450 A.2d 67, 68 (Pa.Super. 1982) ...................................................................... 14

Pfeifer v. Wawa, Inc.,
　　214 F. Supp. 3d 366, 370 (E.D. Pa. 2016) ............................................................ 2

Post v. St. Paul's Traveler's Insurance,
    691 F.3d 500 (3d Cir.2012) ............................................................. 25

Rizzo v. Haines,
    555 A.2d 68 (Pa. 1989) ................................................................... 13

Sandoz Inc. v. Lannett Co., Inc.,
    544 F. Supp. 3d 505 (E.D. Pa. 2021) .............................................. 23

Spector Gadon & Rosen, P.C. v. Fishman,
    666 Fed. Appx. 128 (3d Cir. 2016) ................................................. 13

TCA Girard v. Morgan, Lewis & Bockius,
    2014 WL 10575350 (Pa.Super. Sept. 18, 2014) ............................. 13

UPMC v. CBIZ, Inc.,
    436 F. Supp. 3d 822 (W.D. Pa. 2020) ......................................... 7-10

UPMC v. CBIZ, Inc.,
    2017 WL 4357984 (W.D. Pa. Sept. 29, 2017) ........................... 12, 15

## **Rules**

Fed.R.Civ.P. 8 .................................................................................... 24

Fed.R.Civ.P. 12 ............................................................................... 1, 23

## **Treatises**

Restatement (Second) of Torts § 766 ................................................. 23

Restatement (Second) of Torts § 766B ............................................... 23

## I.   __INTRODUCTION__

This is Plaintiffs' Opposition to the Rule 12 (b) (6) Motion to Dismiss of

Defendant Schnader Harrison Segal & Lewis, LLP ("Schnader").  As set forth

below, Schnader's Motion should be denied because:

- The gist of the action doctrine does not preclude Plaintiffs' breach of contract claim because Plaintiffs allege Schnader breached specific promises by taking no action in the Ascena Bankruptcy;

- Plaintiffs pleaded proximate cause sufficiently through facts allowing the Court to draw the reasonable inference that Schnader is liable for its failure to make claims in the Ascena Bankruptcy, and had it done so, the result would have been markedly different;

- Plaintiffs established the *__fact of damages__* in the form of tax liability for over $15 million in "phantom" income, which is all that is required;

- Plaintiffs' claim is "ripe" because Plaintiffs clearly have a realistic danger of being taxed on the "phantom" income (and received a notice from John Hancock confirming the phantom income);

- Plaintiffs' claim for damages relating to life insurance policies is not "too remote" because the loss of value of those policies has already occurred;

- Plaintiffs properly set forth a claim for breach of fiduciary duty arising from Schnader's breach of its duty of loyalty by enacting a strategy to acquire the Split-Dollar Policies to absolve Schnader of its previous failure to meet deadlines in the Ascena Bankruptcy;

- Plaintiffs properly set forth a claim for tortious interference because Plaintiffs document that Schnader knew its interference was substantially certain to cause harm and interfere with Plaintiffs' relationships;

- Plaintiffs properly set forth a claim for declaratory judgment because that claim is made in the alternative; and

1

- Attorney's fees are recoverable in this legal malpractice case.

## II.   <u>FACTS</u>

Plaintiffs incorporate by reference the Amended Complaint ("Complaint" or "Compl.") as though fully set forth at length herein.  Specific citations to relevant portions of the Complaint are set forth below.  However, at the outset, the Court should be aware that in Schnader's Motion, ***Schnader does not dispute that it committed legal malpractice***.  Schnader also does not dispute that it learned about the serious debt on the subject Split-Dollar Policies in 2016, and after it committed legal malpractice by failing to enter claims and defenses in the Ascena Bankruptcy in 2021, it knowingly and intentionally led its clients, the Plaintiffs, off a cliff by directing them to acquire the Split-Dollar Policies without disclosing the debt on the Policies and the tax exposure from the acquisition, which gives rise to an enormous tax liability arising from the "Phantom" income attributable to the Split-Dollar Policies, all to attempt to absolve itself of liability for legal malpractice at the expense of its clients.  ***None*** of which is disputed by Schnader or was disclosed to their clients, as it seeks to wiggle out of responsibility for its conduct.

## III.   <u>LEGAL ARGUMENT</u>

### A.   <u>STANDARD OF REVIEW</u>

In <u>Pfeifer v. Wawa, Inc.</u>, 214 F. Supp. 3d 366, 370 (E.D. Pa. 2016), Judge Diamond of this Court explained:

2

In deciding Defendants' Motion (to dismiss), I must conduct a two-part analysis. First, I accept factual allegations, and disregard legal conclusions or mere recitations of the elements. I then determine whether the allegations make out a "plausible" claim. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. The burden is on Defendants to show that the plaintiff has failed to allege facts sufficiently detailed to raise a right to relief above the speculative level. (Internal citations and quotations omitted).

**B.    THE "GIST OF THE ACTION" DOCTRINE DOES NOT BAR PLAINTIFFS' BREACH OF CONTRACT CLAIM**

Beginning on Page 5 of its Brief, Schnader contends Plaintiffs' breach of contract claim should be dismissed under Pennsylvania's gist of the action doctrine. However, because Plaintiffs allege Schnader breached specific executory promises made to Plaintiffs by taking no action in the Ascena Bankruptcy, the law requires the Court to deny Schnader's motion as to this issue.

In New York Cent. Mut. Ins. Co. v. Edelstein, 637 Fed. Appx. 70, 72–74 (3d Cir. 2016), the Third Circuit, relying on Bruno v. Erie Insurance Company, 106 A.3d 48 (Pa.2014), explained how the gist of the action doctrine determines whether a cause of action, although arising from a contractual relationship, sounds in contract or in tort. The Court explained:

If the facts of a particular claim establish that the duty breached is one created by the parties *by the terms of the contract*—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract," then the claim should be treated as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of

3

torts and, hence, exists regardless of the contract, then it must be regarded as a tort. In sum, a claim sounds in negligence unless it is alleged that the party breached one of the specific executory promises which comprise the contract. Edelstein, 637 Fed. Appx. At 72–74 (internal citations and quotations omitted).

Thus, the gist of the action doctrine does not bar a legal malpractice breach of contract claim where the plaintiff can "identify a specific contractual obligation that Appellees failed to perform or point to an explicit agreement or instruction that Appellees breached." Id.

Accordingly, following Bruno, as long as a breach of contract claim is based upon a specific executory promise, the gist of the action doctrine does not bar a breach of contract claim, *even where the claims are based on the same conduct*:

> *The fact that the tort claims were based on the same conduct that also breached the parties' contracts does not, however, mandate the conclusion that they are barred by the gist of the action doctrine.* Rather, the critical issue is whether the tort claims are based on a violation of a social duty imposed by the law of torts that exists independent of the terms of the parties' contract … Thus, where a tort claim is based on a fiduciary duty that exists by virtue of the defendant's employment separate and apart from the terms of any contract between the parties, it is not barred even though the same conduct also constitutes a breach of an express contractual obligation. Bert Co. v. Turk, 257 A.3d 93, 140 (Pa.Super. 2021) (quoting Bruno, 106 A.3d at 68) (emphasis supplied).

Here, the Complaint asserts that after Plaintiffs received notices in the Ascena Bankruptcy, Schnader made specific executory promises to "take care of" the Notices and protect the Split-Dollar Policies in the Ascena Bankruptcy. [Compl., ¶ 48] In breach of those promises, Schnader took no action, and allowed

4

the January 19, 2021 bar date (and all subsequent bar dates) to expire. [Compl., ¶ 54, 58] Plaintiffs' breach of contract claim is based upon the breach of these executory promises. [Compl., ¶ 126-127] Thus, the gist of the action does not bar the breach of contract claim.

In its Motion, Schnader relies upon a quote from Nkansah v. Kleinbard LLC, 2020 WL 920269, at *4 (E.D. Pa. Feb. 26, 2020), that "where the claim is based on the same conduct underlying the negligence claim, rather than the defendant's breach of a specific contract provision, it sounds in tort, not contract," to argue that as long as the same conduct is at issue, the gist of the action doctrine precludes a breach of contract claim. [Schnader Brief, p. 8] This analysis fails, however, because as the Court explained in Nkansah, the claimed "conduct" that gives rise to a breach of contract claim ***is the breach of a specific executory promise*** (such that the source of the duty is in contract, not tort), rather than an alleged breach of the professional standard of care (such that the source of the duty was in tort):

> Nkansah does not allege that the defendants failed to follow his instructions or breached any specific executory promise in their agreement. His claim is based on the alleged breach of the professional standard of care. Nkansah, 2020 WL 920269, at *5.

Here, unlike Nkansah, Plaintiffs assert Schnader breached a specific promise, such that the source of its alleged duty is in assumpsit. Thus, the gist of the action doctrine does not preclude the breach of contract claim. Edelstein, supra.

## C.    THE MOTION TO DISMISS BASED ON LACK OF CAUSATION FAILS

Schnader also contends Plaintiffs' have failed to plead proximate causation. However, because the Complaint abundantly sets forth facts allowing the Court to draw the reasonable inference that Schnader is liable for its failure to enter its appearance and make claims in the Ascena Bankruptcy, and had it done so, the result would have been markedly different (and Plaintiffs would have received the benefits of the Split-Dollar Policies), Plaintiffs have established proximate cause.

"Under Pennsylvania law, a legal malpractice claim sounding in negligence requires the plaintiff to prove: (1) the employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff." Bayview Loan Svc., LLC v. Richard M. Squire & Assocs., 2010 WL 5122003, at *3 (E.D. Pa. Dec. 14, 2010).  To meet the "proximate cause requirement," in the litigation context, "a plaintiff must prove that, *but for his attorney's negligence, a different result would have occurred in the litigation*." FCS Capital LLC v. Thomas, 579 F. Supp. 3d 635, 649 (E.D. Pa. 2022).

Further, where proximate cause has been pleaded in the complaint, the causation element of a legal malpractice claim "cannot be determined at the motion to dismiss stage." Gen. Nutrition Corp. v. Gardere Wynne Sewell, LLP, 2008 WL 4411951, at *3 (W.D. Pa. Sept. 23, 2008); Bandy v. Frank, 2008 WL 11515987, at *3 (E.D. Pa. Oct. 29, 2008) (Defendants' argument "that Plaintiffs have failed to

establish a causal link between any damages and the alleged malpractice ... is premature in this respect and may be more appropriate at summary judgment."). As long as a plaintiff alleges "*factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged*," the causation element is satisfied.  Bayview, 2010 WL 5122003, at *3.  This is particularly true where (as here) the legal malpractice case involves the failure of an attorney to even present a case.  Knopick v. Downey, 2014 WL 1339661, at *4 (M.D. Pa. Apr. 3, 2014).

A good example of how Plaintiffs have sufficiently set forth "but for" causation in the Complaint is in UPMC v. CBIZ, Inc., 436 F. Supp. 3d 822, 836 (W.D. Pa. 2020).  In that case, the plaintiff ("UPMC") acquired an underfunded pension fund ("Altoona") which, based on bad information from its professionals, did not apply for a so-called "distress termination" from the Pension Benefit Guarantee Corporation ("PGBC").  UPMC contended that if such an application had been made, a significant amount of pension liability would have been avoided. Just like here, the defendants contended UPMC could not establish that "but for the Defendant's malpractice," the application for a distress termination would have been successful.  However the Court rejected this argument, finding it was a jury question:

> Plaintiffs claim that Defendants' errors in reporting its true pension
> liabilities harmed them because the errors prevented Altoona from

7

seeking and obtaining PBGC relief, which caused Plaintiffs to pay off liabilities they could have avoided. A claim of this nature cannot be entirely free of speculation on the part of the jury because the claim requires them to assess the "case within a case:" but for the malpractice, the plaintiff would have been successful in its underlying action, which here is Altoona's distress termination application. ... *The speculation with which Defendants take issue is the fact-finding function of the jury. Determining what would have happened had Altoona been provided accurate pension liability numbers necessarily involves determining questions of fact that cannot be answered as a matter of law.*

Plaintiffs have introduced sufficient evidence to meet their burden of production to show a jury that but for Defendants' malpractice, Altoona would have applied for and received PBGC relief. The extent of the damages Plaintiffs allege is not speculative and can be established through both expert and lay witness testimony. Plaintiffs provide a reasonable basis for their damages calculation and it will be up to the jury to determine the terms on which the PBGC would have granted relief and the damages Plaintiffs suffered as a result. Id.

Similarly, in Bayview, this Court explained.

No doubt, to recover the lost deficiency that plaintiffs claim as damages they must show causation by proving that they would have recovered it in the underlying litigation but for defendants' negligence. At the pleading stage, however, I must ask whether plaintiffs have pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged. Plaintiffs have alleged that the Property was sold well below market value; Peter Pugliese owed plaintiffs in excess of $377,499.00 as a deficiency; plaintiffs instructed defendants to pursue the resulting deficiency; defendants failed to file a petition to fix fair value, which is required in order to pursue a deficiency; and as a result of defendants' careless, negligent and reckless conduct plaintiffs suffered damages. Plaintiffs' allegations sufficiently plead the element of causation, and thus plaintiffs' have properly stated a claim for negligent malpractice. Bayview, 2010 WL 5122003, at *3.

Here, causation has been pleaded and a determination of causation is inappropriate at the Motion to Dismiss stage, and the Court should deny Schnader's Motion on this basis alone.  Moreover, just like in <u>UPMC</u>, Plaintiffs have alleged that although Schnader took no action at any time to engage in the Ascena Bankruptcy, if an appearance had been entered in the Ascena Bankruptcy, the result would have been different and far more favorable to the Plaintiffs.  For example, Plaintiffs allege in the Complaint that if Schnader entered its appearance in the Bankruptcy, and filed claims and defenses in the Ascena Bankruptcy, Schnader could have ***accepted the 100% rejection of the Split-Dollar Policies*** with no exposure and had Ascena assign to Plaintiffs the right to receive the beneficial ownership of those policies, with the debt on those policies rejected [Compl., ¶ 87] The Complaint continues:

> 93.    Thus, Plaintiffs will show at trial that had a claim been made in the bankruptcy, or even a protective motion filed on behalf of the Plaintiffs, the end-result for the Plaintiffs would have been markedly different, Plaintiffs (and/or their named nominees) would have received the benefits from the Split-Dollar Policies, and Plaintiffs would (in all cases) not have suffered the extreme loss arising from the decision of the Schnader Firm (acting in breach of its duty of loyalty and its own self-interest, as set forth below) to recommend that Plaintiffs take ownership of the Split-Dollar Policies, and the harm claimed by the Plaintiffs would not have occurred.  [Compl., ¶ 93]

Thus, Plaintiffs have alleged "factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged."

Bayview, 2010 WL 5122003, at *3. Plaintiffs have met their burden of pleading

causation, and Schnader's Motion to Dismiss on this point must be denied.

In this connection, Schnader asks the Court to simply ignore the content of

the Complaint and dismiss Plaintiffs' claim as to certain kinds of damages based

on Schnader's characterizations. These arguments are likewise meritless.

For example, although Plaintiffs assert in the Complaint that had Schnader

entered its appearance and asserted claims in the Bankruptcy, Schnader could have

***accepted the rejection of the Split-Dollar Policies***, and had Ascena assign to

Plaintiffs the right to receive the beneficial ownership of those policies, with the

debt on those policies rejected [Compl., ¶¶ 88-90 ], Schnader (which it appears has

not even read the Amended Complaint) argues "***even if Schnader had objected to***

***the rejection of the agreements or the policies, the outcome would have been the***

***same.***" [Schnader Brief, p. 11] This ***wholly contravenes what Plaintiffs have***

***asserted in the Complaint,*** and the Court cannot accept Schnader's assertions

rather than the facts set forth in the Amended Complaint, as true.[1]

Similarly, on Page 14 of Schnader's Motion, Schnader asserts that it should

not be held responsible for the income taxes paid on the premiums for the Split-

---

[1] Just like in UPMC, determining what would have happened had Schnader entered its appearance in the Bankruptcy necessarily involves determinations of fact that cannot be answered here as a matter of law. UPMC, 436 F. Supp. 3d at 836. Accordingly, the Court cannot grant Schnader's Motion to Dismiss as to Schnader's failure to engage in the Ascena Bankruptcy.

Dollar Policies, because "there are no allegations establishing that Schnader had anything to do with the payment of these premiums."  But this misses the point. Plaintiffs allege that had Schnader engaged in the Ascena Bankruptcy, it would have preserved the value of the Split-Dollar Policies, and eliminated the debt, thereby preserving the benefits of the Split-Dollar Policies pursuant to which the Plaintiffs paid taxes.  [Compl., ¶¶ 92-94 and Exhibit "4"]  By failing to take any action in the Ascena Bankruptcy (and later directing the Plaintiffs to assume the Split-Dollar Policies burdened by $15 million in debt), Plaintiffs lost the value of the premium payments they had paid for over thirty-years (and to make matters worse, through the transfer, Plaintiffs were forced to accept over $15 million in debt Schnader knew existed which Schnader knew would create taxable income to their clients as new owners).  [Compl., ¶¶ 92-94, 106-107 and Exhibit "4"]

In all, Plaintiffs have alleged factual content that allows the court to draw the reasonable inference that Schnader is liable for misconduct alleged by virtue of its failure to engage in the Ascena Bankruptcy, and that as a result, Plaintiffs lost their entitlement to the policy benefits and sustained other damages transferring policies outside of the bankruptcy.  Accordingly, Schnader's Motion to Dismiss on this point must be denied.

**D.**   **THE MOTION TO DISMISS BASED ON "HYPOTHETICAL" DAMAGES FAILS**

11

On Page 14 of Schnader's Motion to Dismiss, Schnader asks the Court to dismiss Plaintiffs' claim for damages arising from the tax consequences of the transfer of the Split-Dollar Policies, which (because they were burdened with millions of dollars in debt of which Schnader failed to advise the Plaintiffs), give rise to "phantom income," such that "*there would be huge tax liabilities upon a transfer*." [Compl., ¶ 114]  Schnader's argument in this regard, which cites to no case law and relies entirely on facts and assertions not set forth in the Complaint, is that such damages are "hypothetical."  However, contrary to Schnader's argument, because the Complaint asserts the transfers of the Split-Dollar Policies will result in at least $15 million in "phantom" income for which Plaintiffs will have to pay taxes without corresponding value [e.g., Compl., ¶ 116] , Plaintiffs have established the *fact of damages* and provided a reasonably fair basis for their calculation, which is all that is required.  UPMC v. CBIZ, Inc., 3:16-CV-204, 2017 WL 4357984, at *8 (W.D. Pa. Sept. 29, 2017).  Moreover, under Pennsylvania law, damages for the negative tax consequences caused by a defendant's conduct are routinely recoverable as a matter of law, even if there is an element of speculation in their calculation.  Id; Loesch v. City of Phila., CIV. A. 05-CV-0578, 2008 WL 2557429, at *10 (E.D. Pa. June 25, 2008); Eshelman v. Agere Sys., Inc., 554 F.3d 426, 441–42 (3d Cir. 2009); Hall v. Hall, 753 Fed. Appx. 96, 101 (3d Cir. 2018).

"An essential element to [a legal malpractice] cause of action is proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm." Spector Gadon & Rosen, P.C. v. Fishman, 666 Fed. Appx. 128, 132 (3d Cir. 2016). "The test of whether damages are remote or speculative has **nothing to do with the difficulty in calculating the amount**, but deals with the more basic question of whether there are identifiable damages. Thus, damages are speculative only if the uncertainty **concerns the fact of damages rather than the amount**." Rizzo v. Haines, 555 A.2d 68 (Pa. 1989); TCA Girard v. Morgan, Lewis & Bockius, 2014 WL 10575350, at *3 (Pa.Super. Sept. 18, 2014). "Once the fact that damages occurred has been established, the jury is permitted to determine the extent of those damages." Curran v. Stradley, Ronon, 521 A.2d 451, 454–55 (Pa.Super. 1987).

All of which is consistent with Pennsylvania law that "[w]hile … damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." Malley-Duff & Assocs. v. Crown Life Ins., 734 F.2d 133, 148 (3d Cir. 1984). "Moreover, the proof may be indirect and may include estimates based upon assumptions. It is only necessary that the assumptions **rest on adequate data**." Id. "[D]amages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of

13

damages may consist of probabilities and inferences … If the facts  afford a

***reasonably fair basis for calculating how much plaintiff's entitled to***, such

evidence cannot be regarded as legally insufficient to support a claim for

compensation." <u>AMCO Ins. Co. v. Emery & Associates, Inc.</u>, 926 F. Supp. 2d 634,

647 (W.D. Pa. 2013).  Further:

> A defendant whose wrongful conduct has rendered difficult the
> ascertainment of the precise damages suffered by the plaintiff, is not
> entitled to complain that damages cannot be measured with the same
> exactness and precision as would otherwise be possible. It would be a
> perversion of fundamental principles of justice to deny all relief to the
> injured person, and thereby relieve the wrongdoer from making any
> amend for his acts. In such case, while damages may not be
> determined by mere speculation or guess, it will be enough if the
> evidence shows the extent of the damages as a matter of just
> and reasonable inference, although the result only be approximate.
> The wrongdoer is not entitled to complain that damages cannot be
> measured with exactness and precision that would be possible if the
> case, which he alone is responsible for making, were otherwise. The
> risk of the uncertainty should be thrown upon the wrongdoer instead
> of upon the injured party. The precise amount cannot be ascertained
> by a fixed rule but must be [a] matter of opinion and probable
> estimate.  <u>Deitrick v. Costa</u>, 849 Fed. Appx. 362, 368 (3d Cir. 2021).

Even where a plaintiff is aware of its exposure, but does not know the ***precise***

***nature of damages***, judgment as a matter of law is not appropriate:

> The fact that the precise nature of the damages is uncertain at this
> stage does not require a grant of judgment in favor of defendants.
> In *Pashak v. Barish,* 303 Pa.Super. 559, 450 A.2d 67, 68 (1982), the
> Superior Court held that "damages are speculative only if the
> uncertainty concerns the fact of damages rather than the amount."
> Here, plaintiffs have provided sufficient evidence to raise a genuine
> issue of material fact as to their allegations that they will suffer injury
> whether the USPTO grants or denies their patent applications. They

argue that if the patent applications are granted by the USPTO plaintiffs will have lost valuable patent life as a result of defendants' malpractice. If, on the other hand, the patent applications are denied, plaintiffs will have lost the opportunity to have their applications considered under the more lenient pre-*KSR* standard.
Therefore, the allegation that plaintiffs have suffered injury is supported by the evidence even if the precise nature of the damages is unclear. Accordingly, I will deny defendants motion for summary judgment on this point. ASTech Int'l, LLC v. Husick, 676 F. Supp. 2d 389, 405 (E.D. Pa. 2009).

In UPMC, after plaintiffs sought to recover excise taxes, penalties, interest

and back premiums to the IRS as a result of defendants' conduct, defendants (like

Schnader in this case) argued that such damages were "too speculative to make out

a cognizable claim," because those taxes and penalties "'*may*' occur in the future."

In rejecting that argument, the court explained:

> Under Pennsylvania law, damages are considered speculative only if there is uncertainty concerning the existence of damages rather than the ability to precisely calculate the amount or value of damages. The test of whether damages are remote or speculative deals with the more basic question of whether there are identifiable damages … while CBIZ may be correct that the Complaint's allegations as to the additional fines and penalties are not a picture of perfect clarity, they need not be. Altoona's allegations of additional fines and penalties need only possess sufficient factual content to allow the Court to draw the reasonable inference that the defendant is liable. These allegations accomplish this threshold requirement. UPMC, 2017 WL 4357984, at *8 (citations and internal quotations omitted).

Moreover, even where it is alleged that such damages are speculative,

alleged difficulty in calculating tax consequences caused by the conduct of the

defendant will not give rise to a dismissal:

15

The Third Circuit has noted that the risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim. Thus, as with prejudgment interest, the mere fact that there is an element of speculation involved in calculating the taxes that would have been paid on lost wages does not provide a sound reason for denying the award. Since it has been already determined that the wages in question were lost as a result of Defendant's unlawful actions, the Defendant is not entitled to complain that [the damages] cannot be measure with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. Loesch, 2008 WL 2557429, at *10.[2]

Here, quite simply, Plaintiffs have alleged that in directing Plaintiffs to effectuate the transfer of the Split-Dollar Policies (which were burdened by at least $15 million in debt), Schnader overlooked that "there would be huge tax liabilities upon a transfer" [Compl., ¶ 114], because the transfer would give rise to phantom income and an "inherent gain" that would cause, as Schnader phrased it, a "debt disaster." [E.g., Compl., ¶¶ 112-114] The Complaint continues:

118. Thus, due to the transfers directed by the Schnader Firm, at a minimum, the Plaintiffs must pay continued premiums on 100% of the policies (which are three years in arrears), interest on 100% of the loans (three years in arrears), and tax on the "phantom income" they will never receive, as follows:

---

[2] Additionally, as set forth above, in Pennsylvania damages for negative tax consequences caused by a defendant's conduct are routinely recoverable, even if there is an element of speculation in their calculation. E.g., Eshelman, 554 F.3d at 441–42 (allowing, in an ADA case, "an award of an additional sum of money to compensate for the increased tax burden a back pay award may create."); Hall, 753 Fed. Appx. at 101 (allowing an award of "compensation for the tax consequences of Samuel's alleged breach of fiduciary duty.").

16

- Steven is exposed to taxes on the transfer on a "taxable amount" of $4.791 million, while remaining obligated on a $5.7 million loan, having to pay interest on that full loan (which was three years in arrears), and having to pay premiums for the full amount of the policies (also three years in arrears), with no appreciable benefit for his nominee at the time of his death;

- Sam is exposed to taxes on the transfer on a "taxable amount" of $6.571 million, while remaining obligated on a $7.9 million loan, having to pay interest on that full loan (which was three years in arrears), and having to pay premiums for the full amount of the policies (also three years in arrears), with no appreciable benefit for his nominee at the time of his death; and

- Vederman is exposed to taxes on the transfer on a "taxable amount" of $4.735, while remaining obligated on a $5.7 million loan, having to pay interest on that full loan (which was three years in arrears), and having to pay premiums for the full amount of the policies (also three years in arrears), with no appreciable benefit for his nominee at the time of his death.  [Compl., ¶¶ 116-119]

At trial, Plaintiffs will produce expert testimony to establish that taxes will be levied on this phantom income, and to calculate the damages.

Thus, Plaintiffs have both pleaded the **_fact_** of damages (i.e., that Plaintiffs **_will_** have to pay taxes on "phantom income" that would never have inured to it but for the negligence of Schnader), and provided a reasonable basis for the calculation of damages.  Following UPMC, while the full amount of these damages may involve some element of speculation as to the amount (at this time), but not the exposure, dismissal at the Motion to Dismiss stage is inappropriate because Plaintiffs have met their burden of pleading.  This is particularly true because it is Schnader's negligent and reckless conduct caused these damages, Plaintiffs are the

victims, and Schnader "is not entitled to complain that [the damages] cannot be measured with the exactness and precision that would be possible if the case, which [Schnader] alone is responsible for making, were otherwise." Because Plaintiffs have established the fact of the tax damages, Schnader's Motion to Dismiss must now be denied.

**E.   THE MOTION TO DISMISS FOR LACK OF "IMMINENT HARM" FAILS**

On Page17 of Schnader's Brief, Schnader argues that Plaintiffs claim to recover for the tax consequences of the transfer of the Split-Dollar Policies is not "ripe" due to the asserted lack of "imminent harm." Under clear Third Circuit precedent, this argument has no merit. Hall, 753 Fed. Appx. at 101.

As to "imminent harm," the Third Circuit explained:

> Article III limits the jurisdiction of federal courts to actual "cases or controversies." To establish standing, a plaintiff must allege facts sufficient to establish an injury-in-fact, which is an invasion of a legally protected interest [that] is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. While a plaintiff need not await the consummation of threatened injury to obtain preventive relief, he must demonstrate a ***realistic danger of sustaining a direct injury as a result of the challenged conduct or that the injury is certainly impending***. Goode v. Gioria, 590 Fed. Appx. 120, 121 (3d Cir. 2014) (internal citations and quotations omitted.)

In Hall, the estate of a decedent contended that the decedent's son, who once had power of attorney over the decedent's affairs, breached his fiduciary duty by engaging in a transaction that would, at some point in the future, give rise to a

large capital gain tax liability.  After the trial court dismissed this claim, believing that the "estate's damages request for the tax consequences arising out of Samuel's and his law firm's alleged breach of fiduciary duty … were not ripe until the taxing authority had determined the amount of tax due, or, as the Court put it, until the tax liability was fixed," the estate appealed (precisely the same argument made by Schnader in this case).  Hall, 753 Fed. Appx. at 101.  The Third Circuit reversed:

> The Estate argues that the District Court improperly dismissed its tax liability, legal malpractice, and conversion claims. We turn first to the tax liability claims. The District Court dismissed the Estate's damages request for the tax consequences arising out of Samuel's and his law firm's alleged breach of fiduciary duty because it believed that the tax liability claims were not ripe until the taxing authority had determined the amount of tax due, or, as the Court put it, until the tax liability was fixed.  …
>
> ***
>
> [T]he Estate's claims are ripe. The tax liability claims here do not involve a suit against a taxing authority seeking to compel a declaration of liability, which was the narrow and unique context in which we decided Birdman. Instead, the claims here are more analogous to the claim at issue in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009). In Eshelman, the plaintiff sought, among other things, compensation for the tax consequences of a back pay award based upon an economic expert's analysis of the tax-effect of the back pay, the applicable tax rate, and the plaintiff's income tax returns for the appropriate years. Id. at 442. We held that it was appropriate for a plaintiff to receive such "compensation for the negative tax consequences of ... [the] back pay award." Id. at 443. The same holds true here because the Estate seeks compensation for the tax consequences of Samuel's alleged breach of fiduciary duty. Accordingly, we will vacate the District Court's dismissal of the tax liability claims.  Id.

19

Hall is on point.  Like the plaintiff in Hall, Plaintiffs in this case have alleged that due to the conduct of Schnader, Plaintiffs engaged in a transaction that gave rise to an enormous amount of "phantom income" on which they will have to pay taxes.  Because taxes on this phantom income will have to be paid, there is obviously a realistic chance that a future injury will occur, such that the injury is sufficiently imminent, and the fact that they have not yet been "fixed" is of no moment.  Therefore, just like in Hall, Plaintiffs have Article III standing to proceed in this case, and Defendants' arguments to the contrary have no merit.[3]

## F.    THE MOTION TO DISMISS BASED ON "REMOTENESS" SEEKS TO REWRITE PLAINTIFFS' COMPLAINT

On Page 19 of its Brief, Schnader argues "Plaintiffs' interests in their life insurance policies are too remote and speculative," because benefits will only be paid out "upon the death of the insured."  This argument fails because it improperly seeks to rewrite the Complaint.

---

[3] All of which is in addition to the fact that Plaintiffs have identified multiple injuries they have already sustained, including the attorney's fees they paid and the loss of the value of the Split-Dollar Policies.  [E.g., Compl., ¶ 128]  Thus, regardless of the tax issue, Plaintiffs have already sustained out-of-pocket losses, and this case is ripe for adjudication in all cases.  New Falls Corp. v. Lerner, 2006 WL 2801459, at *2 (D. Conn. Sept. 28, 2006) ("None of these cases … held that a malpractice action is not ripe for justiciability purposes when the plaintiff has already sustained damages. In this case, at least some of plaintiff's damages are present damages. This case thus presents a live case or controversy and is ripe …")

According to the Complaint, due to the failure of Schnader to engage and make claims in the Ascena Bankruptcy, all the value in the Split-Dollar Policies was destroyed. [E.g., Compl., ¶¶ 87-93] Had Schnader acted in accordance with its promises, that value would have been maintained. Id. Thus, the loss of Plaintiffs' share of the value of the Split-Dollar Policies has **already occurred** (but could have been saved), which was caused directly by the Schnader Firm. Thus, the argument that these damages are "too remote and speculative" is meritless.

## G.    THE MOTION TO DISMISS PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY MUST BE DENIED

Plaintiffs' Complaint asserts that after Schnader missed the filing deadlines for the Ascena Bankruptcy, it breached its fiduciary duty to Plaintiffs by cooking up a disastrous scheme to transfer the Split-Dollar Policies to Plaintiffs to obscure its failures, in breach of its fiduciary duty of loyalty to the Plaintiffs. As to this:

> In Pennsylvania, cause of action may be maintained against an attorney for breach of his or her fiduciary duty to a client. Such duty demands undivided loyalty … and breach of such duty is actionable.
>
> In the context of Pennsylvania legal malpractice, breach of fiduciary duty has often been understood by courts to describe a claim for breach of an attorney's duty of loyalty, rather than an attorney's duty of care. The precise legal standard in Pennsylvania for establishing a breach of fiduciary duty in this sense has not been as clearly articulated by the state's highest court as that for negligent malpractice, and district courts have turned to the Pennsylvania Suggested Standard Civil Jury Instructions to articulate the elements of such a claim. A panel of the Third Circuit appears to have tacitly endorsed this approach. *See Dinger v. Allfirst Financial, Inc.,* 82 Fed. App'x 261, 265 (3d Cir.2003) …

> [E]stablishing a breach of fiduciary duty requires plaintiff to prove:
> (1) that the defendant negligently or intentionally failed to act in good
> faith and solely for the benefit of plaintiff in all matters for which he
> or she was employed; (2) that the plaintiff suffered injury; and (3) that
> the agent's failure to act solely for the plaintiff's benefit ... was a real
> factor in bring[ing] about plaintiff's injuries. <u>Bayview</u>, 2010 WL
> 5122003, at *4–5 (internal citations and quotations omitted).

In <u>Bayview</u>, plaintiffs argued their lawyer breached his fiduciary duty by

"attempt[ing] to hide their lapse by failing to inform plaintiffs that they had missed

the deadline for filing a petition to fix fair value, informing President Judge

Schmehl that they did not object to marking the judgment satisfied without

consulting plaintiffs, failing to inform plaintiffs that the judgment was marked

satisfied, and continuing to press the deficiency claim despite knowing it was

unmeritorious." <u>Id.</u> The Court found that this conduct may constitute a failure "to

act in good faith and solely for the benefit of plaintiff," sufficient to state a claim

for breach of fiduciary duty against an attorney in Pennsylvania. <u>Id.</u>

On Page 21 of Plaintiffs' Motion, Schnader argues a breach of fiduciary duty

claim exists only where a lawyer usurps a client opportunity or represents another

party that can benefit from confidential information. However, Plaintiffs' claim

for breach of fiduciary duty is the same breach (the breach of a duty of loyalty by

an attorney seeking to cover up previous mistakes through a strategy seeking to

benefit the attorney at the expense of the client) alleged in <u>Bayview</u>.  Accordingly,

Schnader's Motion to Dismiss the breach of fiduciary duty claim must be denied.[4]

## H.   <u>THE MOTION TO DISMISS THE TORTIOUS INTERFERENCE CLAIM FAILS</u>

On page 23 of their Motion, Schnader argues that Plaintiffs' tortious

interference clam should be dismissed because Plaintiffs have failed to plead

"purposeful action."  However, Schnader overlooks the fact that under

Pennsylvania law, "intent can be inferred from a defendant's 'purposeful action'

when he or she 'knows that the interference is certain or substantially certain

to occur.'" <u>Odyssey Waste Servs., LLC v. BFI Waste Sys. of N. Am., Inc.</u>, 2005

WL 3110826, at *5 (E.D. Pa. Nov. 18, 2005) (quoting Restatement (Second) of

Torts § 766, cmt. j.); <u>Sandoz Inc. v. Lannett Co., Inc.</u>, 544 F. Supp. 3d 505, 513

(E.D. Pa. 2021) ("The Restatement provides that a defendant's interference is

deemed intentional when "the actor desires to bring it about or if he knows that

the interference is certain or substantially certain to occur as a result of his action."

Restatement (Second) of Torts § 766B cmt. d (1979).").  Here, the Complaint

pleads that Schnader "knew that interference with those policies was substantially

certain to occur." [Compl., ¶ 145]   Further, the intent of the Schnader Firm is set

---

[4] Schnader also contends "Plaintiffs have not shown … that the outcome of the
Ascena bankruptcy … would have been different," and that "Schnader could have
been acting only in Plaintiffs' interest."  But these conclusory arguments directly
contravene the factual allegations of the Complaint, they are simply not true, and
they are not grounds for the Court to dismiss this case on a Rule 12 (b) (6) motion.

forth in detail in Sections "G" and "H" of the Complaint, which document that the Schnader's firm was conduct was knowing and intentional.  Thus, Plaintiffs sufficiently pleaded the "intent" necessary to state a claim for tortious interference.

I.    **THE MOTION TO DISMISS THE DECLARATORY JUDGMENT CLAIM FAILS**

On page 23, Schnader argues that Plaintiffs' declaratory judgment claim should be dismissed as "duplicative."  However, as noted in Paragraph 151 of the Complaint, the declaratory judgment claim is made ***in the alternative*** based upon Schnader's contentions that, *inter alia*, Plaintiffs' claimed damages are not yet ascertainable.  In other words, if the Court finds that Plaintiffs affirmative damages claims fail because they are "hypothetical," Plaintiffs can still obtain a declaratory judgment that they are entitled to indemnity from Schnader for the consequences of its malpractice.  As to this, Rule 8(e)(2) states in relevant part: "A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses.... A party may also state as many separate claims or defenses as the party has regardless of consistency....".  Fed. R. Civ. Pro. 8(e)(2).  Because Plaintiffs are permitted as a matter of law to plead in the alternative, the Court cannot dismiss the declaratory judgment claim as "duplicative."

J.    **ATTORNEYS' FEES ARE RECOVERABLE IN A LEGAL MALPRACTICE CASE**

24

On page 24 of Schnader's brief, Schnader asserts that attorney's fees are not recoverable based upon the so-called "American Rule." However, Schnader overlooks the fact that this is a legal malpractice case:

> The United States Court of Appeals for the Third Circuit has similarly stated that attorney fees are "an item of damages in a legal malpractice claim." Post v. St. Paul's Traveler's Insurance, 691 F.3d 500, 520–21 (3d Cir.2012) (citing Bailey v. Tucker, 533 Pa. 237, 251–52, 621 A.2d 108, 115 (1993) (explaining that when an attorney agrees to render services for a fee, and that contract is breached, the fees paid by the client are recoverable as damages) …

B & D Masonry, Inc. v. Green, 2013 WL 4532791, at *7 (E.D. Pa. Aug. 26, 2013).

Accordingly, Plaintiffs' demand for attorney's fees cannot be dismissed.

## IV.  CONCLUSION

For any and all of the foregoing reasons, Plaintiffs respectfully request that this Honorable Court deny the Motion to Dismiss.

Respectfully submitted,

*Paul R. Rosen*

Paul R. Rosen, Esq.
Leslie B. Baskin, Esq.
Andrew J. DeFalco, Esq.
Spector Gadon Rosen Vinci, P.C.
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
(215) 241-8888 (Main)/(215) 241-8844 (Fax)
Counsel for Plaintiffs

Date:  February 14, 2023

25